Nos. 13-16195, 13-16598, & 13-16749

───────────────────────────────

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

───────────────────────

VERONICA GUTIERREZ, *ET AL.*,

*Plaintiffs-Appellees-Cross-Appellants*,

v.

WELLS FARGO BANK, N.A.,

*Defendant-Appellant-Cross-Appellee.*

───────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

───────────────────────

## SECOND BRIEF ON CROSS-APPEAL OF PLAINTIFFS-APPELLEES-CROSS-APPELLANTS VERONICA GUTIERREZ ET AL.

───────────────────────

Richard M. Heimann
Michael W. Sobol
Roger N. Heller
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
(415) 956-1000

Richard D. McCune
Jae (Eddie) K. Kim
McCUNE & WRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA  92374
(909) 557-1250

*Attorneys for Plaintiffs-Appellees-Cross-Appellants Veronica Gutierrez, et al.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................1

JURISDICTIONAL STATEMENT .............................................................1

ISSUES PRESENTED..................................................................................2

STATEMENT OF THE CASE......................................................................2

      A.    The Trial.............................................................................2

      B.    The District Court's Findings After Trial ...............................3

      C.    This Court's Opinion in *Gutierrez I* ...........................5

      D.    The District Court's Order Following Remand ........................6

SUMMARY OF ARGUMENT .....................................................................7

STANDARD OF REVIEW ...........................................................................9

ARGUMENT ...............................................................................................11

    I.    This Court Should Affirm the District Court's Award of Restitution ........................................................................11

      A.    This Court Previously Affirmed the District Court's Ruling that Wells Fargo Violated California's Consumer Protection Laws and Ruled that Restitution Could Be Awarded to Class Members Consistent With Federal Law.....11

      B.    On Remand, the District Court Adhered to *Gutierrez I* By Basing A Restitution Award on the Affirmed, Non-Preempted Claims ...................................................12

      C.    The District Court Properly Exercised Its Broad Discretion to Fashion a Restitution Award Which This Court Reviews Only To Determine Whether It Is Based Upon "Substantial Evidence" ................................................18

      D.    The District Court Based The Measure Of Restitution Upon "Substantial Evidence." .................................................24

          1.    "Substantial Evidence" Warranted the District Court's Award of Restitution Based Upon The Reasonable Expectations Of The Class Fostered By Wells Fargo's Misleading Statements ....................25

          2.    "Substantial Evidence" Warranted the District Court's Specific Measure of Restitution ......................26

          3.    The District Court's Use of a Chronological Comparison to Wells Fargo's Actual Posting Order Was Based Upon "Substantial Evidence" ....................29

II.  Wells Fargo Fails To Articulate Any Meritorious Basis To Reverse The Restitution Awarded Upon The Substantial Evidence At Trial ...................................................................36

    A.  The District Court Measured Restitution Consistent With the UCL and FAL ....................................................36

        1.  Wells Fargo Improperly Attempts to Impose a Causation and Reliance Requirement On Restitution Awards Under the UCL and FAL ...............36

        2.  Wells Fargo's Novel, Alternative Measurement for Restitution Is Not Recognized Under Applicable Law, Nor Does It Demonstrate That the District Court Abused Its Discretion ...........................................39

    B.  Wells Fargo Improperly Seeks to Require An Inquiry Regarding Class Members' Natural Expectations ...................42

    C.  The District Court Properly Compared The Value Received to the Value Promised ................................45

    D.  Wells Fargo Failed to Establish That Class Members Were "On Notice" of the Practice it Affirmatively Misrepresented ..........................................................48

    E.  Wells Fargo's Waiver Argument Was Properly Rejected by the District Court....................................................52

    F.  Wells Fargo Fails to Establish A Due Process Or Rules Enabling Act Violation ......................................54

        1.  Wells Fargo Seeks to Impose Novel And Substantive Legal Requirements Inconsistent With The Well-Settled Law Of The UCL and FAL Under the Guise Of A Due Process Argument..............54

        2.  Wells Fargo's Arguments Are A Thinly Veiled Attempt To Re-litigate Issues Conclusively Decided By This Court in *Gutierrez I* ...........................58

        3.  Wells Fargo Had Every Opportunity to Introduce Evidence In Support Of Its Defenses .............................59

III.  The Court Should Affirm The District Court's Injunction ...............62

IV.  The District Court Incorrectly Denied Pre-Judgment Interest...........66

CONCLUSION ........................................................................67

CERTIFICATE OF COMPLIANCE........................................................68

STATEMENT OF RELATED CASES ....................................................69

CERTIFICATE OF SERVICE .........................................................70

ADDENDUM:  RELEVANT STATUTES .................................................. A-1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Health, Inc. v. Davila,*
  542 U.S. 200 (2004) .........................................................................18

*AlohaCare v. Hawaii,*
  572 F.3d 740 (9th Cir. 2009) ...........................................................39

*Arizona v. California,*
  460 U.S. 605 (1983) ................................................................. 10, 26

*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.,*
  21 Cal. 4th 352 (1999) .....................................................................20

*Astiana v. Ben & Jerry's Homemade, Inc.,*
  2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014) ....................24

*Ballard v. Equifax Check Servs.,*
  158 F. Supp. 2d 1163 (E.D. Cal. 2001) ...........................................66

*Bank of the W. v. Superior Court,*
  2 Cal. 4th 1254 (1992) ............................................................. 19, 37

*Bott v. Am. Hydrocarbon Corp.,*
  458 F.2d 229 (5th Cir. 1972) ...........................................................66

*Bowers v. Bernards,*
  150 Cal. App. 3d 870 (1984) ...........................................................20

*Brown v. Kerr McGee Chemical Corp.,*
  767 F.2d 1234 (7th Cir. 1985) ................................................. 17, 18

*Chestnut v. Ford Motor Co.,*
  445 F.2d 967 (4th Cir. 1971) ...........................................................62

*Cohen v. DirecTV, Inc.,*
  178 Cal. App. 4th 966 (2009) ..........................................................57

*Coleman v. Tennessee,*
  998 F. Supp. 840 (W.D. Tenn. 1998) ..............................................16

*Colgan v. Leatherman Tool Grp., Inc.,*
  135 Cal. App. 4th 663 (2006) ................................................. passim

*Comcast Corp. v. Behrend,*
  133 S. Ct.1426 (2013) .............................................................. 23, 35

*Cook Inlet Region, Inc. v. Rude*,
  2010 U.S. Dist. LEXIS 132287 (D. Alaska Dec. 13, 2010)................................63

*Corbett v. Superior Court*,
  101 Cal. App. 4th 649 (2002)..............................................................................38

*Cordis Corp. v. Boston Sci. Corp.*,
  275 F. App'x. 966 (Fed. Cir. 2008).....................................................................52

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000).......................................................................... 16, 19, 42

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
  446 U.S. 1 (1980) ...............................................................................................21

*Day v. AT&T*,
  63 Cal. App. 4th 325 (1998)...............................................................................47

*Duran Gonzales v. U.S. Dep't of Homeland Sec.*,
  712 F.3d 1271 (9th Cir. 2013) ..................................................................... 10, 26

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
  967 F.2d 1280 (9th Cir. 1992) ..................................................................... 62, 63

*Ewert v. eBay, Inc.*,
  2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sept. 30, 2010)...............................22

*Faircloth v. Finesod*,
  938 F.2d 513 (4th Cir. 1991) ..............................................................................16

*Farfaras v. Citizens Bank & Trust*,
  433 F.3d 558 (7th Cir. 2006) ..............................................................................52

*Fletcher v. Sec. Pac. Nat'l Bank*,
  23 Cal. 3d 442 (1979).............................................................................. passim

*FTC v. Gill*,
  265 F.3d 944 (9th Cir. 2001) ..............................................................................63

*FTC v. Stefanchik*,
  559 F.3d 924 (9th Cir. 2009) ..............................................................................21

*Gourley v. State Farm Mut. Auto. Ins. Co.*,
  53 Cal. 3d 121 (1991).........................................................................................66

*Graco, Inc. v. Binks Mfg. Co.*,
  60 F.3d 785 (Fed. Cir. 1995) ..............................................................................52

*Grosz-Salomon v. Paul Revere Life Ins. Co.*,
  237 F.3d 1154 (9th Cir. 2001) ............................................................................21

*Guido v. L'Oreal, USA, Inc.*,
   2013 U.S. Dist. LEXIS 94031 (C.D. Cal. Jul. 1, 2013) ................................ 22, 24

*Gutierrez v. Wells Fargo Bank, N.A.*,
   704 F.3d 712 (2012) ................................................................................ passim

*Hutto v. Finney*,
   437 U.S. 678 (1978) ................................................................................21

*In re High-Tech Emp. Antitrust Litig.*,
   2013 U.S. Dist. LEXIS 153752 (N.D. Cal. Oct. 24, 2013)................................58

*In re Neurontin Mktg. & Sales Practices Litig.*,
   748 F. Supp. 2d 34 (D. Mass. 2010)....................................................................9

*In re Neurontin*,
   748 F. Supp. 2d at 93 ..............................................................................20

*In re Outsidewall Tire Litig.*,
   748 F. Supp. 2d 543 (E.D. Va. 2010), *aff'd in relevant part* ...............................16

*In re Pago Pago Aircrash of January 30, 1974*,
   525 F. Supp. 1007 (C.D. Cal. 1981)...............................................................66

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)............................................................... passim

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009)................................................................. passim

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
   2008 U.S. Dist. LEXIS 118344 (S.D. Cal. July 8, 2008)....................................57

*iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*,
   2011 U.S. Dist. LEXIS 144425 (N.D. Cal. Oct. 25, 2011)................................63

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003)................................................................23

*Kraus v. Trinity Mgmt. Servs, Inc.*,
   23 Cal. 4th 116 (2000)................................................................38

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 3101 (2011)................................................................57

*L. & J.G. Stickley, Inc. v. Cosser*,
   255 F. App'x 541 (2d Cir. 2007).........................................................64

*Lemon v. Kurtzman*,
   411 U.S. 192 (1973) ................................................................21

*Lineback v. Spurlino Materials, LLC*,
546 F.3d 491 (7th Cir. 2008) ............................................................63

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949) ........................................................................64

*Newby v. F/V Kristen Gail*,
937 F.2d 1439 (9th Cir. 1991) ..........................................................10

*NLRB v. Express Publ'g. Co.*,
312 U.S. 426 (1941) ........................................................................65

*Ogden v. Bumble Bee Foods, LLC*,
2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014) ................... 22, 24

*Orantes-Hernandez v. Thornburgh*,
919 F.2d 549 (9th Cir. 1990) ............................................................65

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*,
104 Cal. App. 4th 508 (2002) .................................................. passim

*People v. Carbajal*,
10 Cal. 4th 1114 (1995) ...................................................................20

*People v. JTX Tax, Inc.*,
212 Cal. App. 4th 1219 (2013) .........................................................62

*Pfizer, Inc. v. Superior Court*,
182 Cal. App. 4th 622 (2010) ............................................... 37, 44, 57

*Princess Cruise Lines, Ltd. v. Superior Court*,
179 Cal. App. 4th 36 (2009) ................................................... 44, 57

*Quigley v. Rosenthal*,
327 F.3d 1044 (10th Cir. 2003) ........................................................16

*Ries v. Ariz. Bevs. United States LLC Hornell Brewing Co.*,
287 F.R.D. 523 (N.D. Cal. 2012) ......................................................22

*S.C. Johnson & Son, Inc. v. The Clorox Co.*,
241 F.3d 232 (2d Cir. 2001) .............................................................62

*Sawyers v. Collins*,
986 F.2d 1493 (5th Cir. 1993) ..........................................................61

*Sharabianlou v. Karp*,
181 Cal. App. 4th 1133 (2010) .........................................................42

*Skydive Ariz., Inc. v. Quattrocchi*,
673 F.3d 1105 (9th Cir. 2012) ................................................... 63, 64

*Sparkman v. C.I.R.*,
  509 F.3d 1149 (9th Cir. 2007) ................................................................10

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011),
  *cert. denied*, 132 S. Ct. 1970 (2012) ........................................... passim

*Thurston v. Bear Naked, Inc.*,
  2013 U.S. Dist. LEXIS 151490 (S.D. Cal. July 30, 2013)........................... 22, 24

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*,
  682 F.3d 292 (4th Cir. 2012) .................................................................16

*Toscano v. Greene Music*,
  124 Cal. App. 4th 685 (2004)...............................................................20

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011)................................................................64

*Tucker v. Pac. Bell Mobile Servs.*,
  208 Cal. App. 4th 201 (2012).......................................................... 48, 57

*U-Haul Int'l, Inc. v. Jartran*, Inc.,
  793 F.2d 1034 (9th Cir. 1986) ..............................................................64

*United States v. Hansen*,
  2006 U.S. Dist. LEXIS 90449 (S.D. Cal. 2006) ..................................63

*United States v. Larm*,
  824 F.2d 780 (9th Cir. 1987) ................................................................64

*United States v. Philip Morris U.S.A.*,
  566 F.3d 1095 (D.C. Cir. 2009) ............................................................64

*United States v. United States Gypsum Co.*,
  333 U.S. 364 (1948) .............................................................................10

*Unites States v. Norris*,
  428 F.3d 907 (9th Cir 2005)..................................................................10

*Vondran v. McLinn*,
  1995 U.S. Dist. LEXIS 21974 (N.D. Cal. July 5, 1995) .....................64

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .........................................................................57

## STATUTES

12 U.S.C. §§ 1, *et seq.*..................................................................................5

28 U.S.C. § 1291 ........................................................................2

28 U.S.C. § 1332(d)(2) ..............................................................1

Cal. Bus. & Prof. Code § 17200, *et seq.* ................................2

Cal. Bus. & Prof. Code § 17203 ............................................19

Cal. Bus. & Prof. Code § 17204 .......................................44, 57

Cal. Bus. & Prof. Code § 17500, *et seq.* ................................2

Cal. Bus. & Prof. Code 17535 ................................................19

Cal. Civ. Code § 3287 ..........................................................7, 66

Cal. Civ. Code § 3287(a) .........................................................66

Cal. Civ. Code § 3288 ...............................................................7

## RULES

Circuit Rule 28-2.5 ..................................................................59

Fed. R. Civ. P. 23 .....................................................................11

Fed. R. Civ. P. 52(a)(d) ...........................................................10

Fed. R. Civ. P. 65(d) ................................................................62

## INTRODUCTION

This case comes before the Court for the second time. On the first appeal, this Court remanded the case, instructing the district court to determine the amount of restitution, if any, to be awarded on the claims for which the Court affirmed classwide liability. Following remand, the district court awarded classwide restitution in the amount of $203 million, tailoring the measure of restitution consistent with the substantive law of the claims that survived the first appeal, and based upon the substantial evidence adduced at trial. Pursuant to this Court's remand after the first appeal, the district court also entered an injunction limited to enjoining the specific violations of law which this Court concluded took place. The district court's order for restitution and injunctive relief is well within its broad discretion to award equitable relief, is entitled to substantial deference, and is correct as a matter of law.

## JURISDICTIONAL STATEMENT

The district court exercised jurisdiction under 28 U.S.C. § 1332(d)(2). On August 7, 2013, Wells Fargo filed a notice of appeal from the district court's final judgment of August 5, 2013. Wells Fargo's Excerpts of Records ("ER") 225. On August 30, 2013, Plaintiffs filed a timely notice of cross-appeal (Plaintiffs' Supp. Excerpts of Record ("PER") 37-38) from the final judgment (ER 226-227); the district court's May 14, 2013 Order, *inter alia*, denying pre-judgment interest

(ER 1-16); and the district court's October 25, 2010 Order, *inter alia*, denying pre-judgment interest.  (PER 3-8.)  This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether the district court's order for restitution was within its broad discretion and not arbitrary and capricious?

2.      Whether the district court's injunction was not a clear abuse of its broad discretion?

3.      Whether Plaintiffs and the class are entitled to pre-judgment interest?

## STATEMENT OF THE CASE

### A.      The Trial

During the trial, the district court received extensive evidence from both parties regarding the class claims that were tried under the "unfair" and "fraudulent" prongs of the Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") and under Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL").

As discussed in more detail herein, *see infra* Sections I.D, II.D-E, Plaintiffs introduced extensive testimony and documentary evidence of Wells Fargo's marketing materials that represented that it would deduct customers' debit-card transactions in their naturally occurring, chronological order.  The evidence showed that, in fact, Wells Fargo deducted the transactions in the order of highest-to-lowest dollar amount, for the express purpose of increasing the instances of

overdrafts and hence their associated fees.  The named Plaintiffs proved that these misrepresentations deceived them, were pervasively disseminated, and were likely to deceive the class.  A comprehensive expert data analysis calculated, on an account-by-account basis, the difference between the overdraft fees Wells Fargo actually charged, and what it would have charged under a chronological sequencing approximating the order that Wells Fargo represented.

Wells Fargo countered with evidence offered to establish that its representations were not misleading, were narrowly disseminated, and that customers were otherwise "on notice" of its high-to-low posting practice.  Wells Fargo's expert testimony attempted to discredit Plaintiffs' expert data analysis, on the proffered ground that it failed to reflect the extent of each class member's actual reliance on Wells Fargo's representations.  Wells Fargo even offered its own expert analysis purporting to accurately reflect each class member's actual reliance.  Wells Fargo also offered evidence to challenge Plaintiffs' expert's version of the chronological sequencing.  *See infra* Sections I.D, II.D-E.

## B.    The District Court's Findings After Trial

The district court found that Wells Fargo disseminated "misleading information" that "promoted a false perception that debit-card purchases would be deducted from [customers'] accounts in the order transacted"; Wells Fargo's "misrepresentations were placed in such a wide array of marketing documents and

these documents were distributed in such a widespread manner that class members were likely to be misled by them"; and Wells Fargo's "misrepresentations would lead reasonable consumers to believe that the transactions would be deducted from their checking account in the sequence transacted" while "obfuscating its contrary practice of posting transactions in high-to-low order to maximize the number of overdrafts assessed on customers." ER 17-106 (Findings of Fact and Conclusions of Law, "Findings"); ER 70-72, 87-89; *see also* ER 30-32, 38, 55, 57, 64, 68-69, 79-81.

The district court concluded that Wells Fargo was liable to the class, under both the "fraudulent" prong of the UCL and under the FAL, for its deceptive conduct. ER 87-89. The district court also concluded that Wells Fargo was liable to the class under the "unfair" prong of the UCL because it acted in bad-faith when it adopted the high-to-low posting order. ER 81-85.

The district court ordered classwide restitution in the amount of approximately $203 million, for "all claims on which plaintiffs prevailed and liability was established" at trial. PER 1-2; *see also* ER 13. Having been presented with a "range of restitution scenarios presented at trial by both sides," the district court quantified restitution based on a comparison between the fees that Wells Fargo charged class members under its actual high-to-low posting order and the fees it would have charged them under an alternative posting order that best

approximated the chronological ordering class members reasonably expected based on Wells Fargo's affirmative misrepresentations.  ER 102-104.  The district court also ordered permanent injunctive relief.  ER 84-85.

> **C.    This Court's Opinion in *Gutierrez I***

Following Wells Fargo's first appeal in this case, this Court issued an Opinion on December 26, 2012.  *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (2012) (herein "*Gutierrez I*").  The Court held that Plaintiffs' claims under the "fraudulent" prong of the UCL and (by implication) under the FAL, based on Wells Fargo's affirmative misrepresentations, were *not* preempted and affirmed the district court's findings of class-wide liability on those claims.  The Court also affirmed the related findings regarding the class representatives' standing to pursue the claims and the propriety of class certification.  *Id*. at 726-730.  The Court held that Plaintiffs' claims under the "unfair" prong of the UCL and for Wells Fargo's failure to make particular disclosures, were preempted under the National Bank Act ("NBA"), 12 U.S.C. §§ 1, *et seq*.  *Gutierrez I*  at 723-726.

The Court remanded for a determination of the appropriate restitution for the affirmed statutory deception claims, and to enter an injunction to enjoin any further fraudulent or misleading representations concerning the system of posting.  *Id*.

### D.    The District Court's Order Following Remand

Following remand, the district court reinstated the $203 million in class restitution, determining that this remained the appropriate amount in light of the nature of the affirmed claims, the trial record, and the applicable standards for restitution under the UCL and FAL.  ER 12-14.  The district court specifically noted that the quantification of the original restitution award fit the nature of the affirmed claims because it was expressly premised on "restor[ing] the class members to the position consistent with their reasonable expectations induced by the affirmative misrepresentations."  ER 12-14; *see also* ER 102.  The district court also confirmed that the award was "not penalizing Wells Fargo for a practice protected by federal preemption," but instead was tied solely to Wells Fargo's liability under the UCL and FAL for "affirmatively misleading the class as to what the practice was, namely engaging in a practice likely to mislead the class to believe that processing would be done in chronological order when, in fact, processing was done in high-to-low, non-chronological order."  ER 14.

The district court enjoined Wells Fargo "from making or disseminating, or permitting to be made or disseminated, any false or misleading representations relating to the posting order of debit-card purchases, checks, and ACH transactions in its customer bank accounts."  ER 15-16.

The district court rejected, as inconsistent with the record and with Wells Fargo's own statements at the time of trial, Wells Fargo's argument, raised for the first time after remand, that Plaintiffs had waived the right to restitution under the statutory deception claims. ER 6-11.

The district court denied Plaintiffs' request for an award of pre-judgment interest under Cal. Civ. Code §§ 3287(a) and 3288. ER 14.

## SUMMARY OF ARGUMENT

As instructed by this Court, the district court on remand tailored its restitution award to the non-preempted claims for which this Court affirmed classwide liability and to the substantial evidence adduced at trial. As this Court has already held, restitution for Wells Fargo's misrepresentations is not preempted by the NBA.

Wells Fargo's liability to the class under the UCL and FAL having been established, the district court had broad equitable discretion to fashion a restitution award based upon "substantial evidence." This Court must affirm the award unless it finds the district court abused its broad discretion in an arbitrary or capricious manner.

Substantial evidence in the trial record supports the amount of restitution ordered. The district court appropriately measured restitution by comparing what Wells Fargo promised the class to what Wells Fargo delivered, the same approach

that courts in FAL and UCL deception cases have consistently applied.  Moreover, the issues pertinent to the measurement of restitution were the subject of extensive evidentiary submissions at trial by both parties.

Substantial evidence warranted a measurement of restitution based upon a comparison to chronological sequencing, which, as this Court has affirmed, class members reasonably expected based upon Wells Fargo's misrepresentations. Substantial evidence also warranted the specific measure adopted by the district court, which was based on an expert analysis that utilized Wells Fargo's transaction data for every single Wells Fargo account in California during the class period to calculate restitution on an account-by-account basis.

The criteria for alternative restitution measurements that Wells Fargo advances present no basis for reversing the district court's award.  That criteria— *e.g.*, requiring the district court to analyze how class members may have behaved differently under the hypothetical circumstance that Wells Fargo never made the misleading statements it in fact made, or to consider each customer's individual expectations or the extent of their individual actual reliance—are not legally required and, in fact, are directly contrary to decades of UCL and FAL authority, which has consistently held that where, as here, a defendant makes pervasive misrepresentations that are likely to deceive a large class of consumers, restitution may be ordered without proof of reliance, causation and injury.

Wells Fargo's due process and Rules Enabling Act argument is a disguised attempt to re-litigate liability and class certification issues already decided, and to impose new substantive requirements that are inconsistent with well-settled UCL and FAL law. Wells Fargo's argument is also based on the unsupportable premise that it was precluded from presenting evidence or defenses, when in fact it did introduce that evidence, albeit unconvincingly.

The district court's injunction is consistent with this Court's direction, clear and appropriate in scope, and well within the district court's broad discretion under the UCL and FAL.

The district court should have awarded pre-judgment interest.

## STANDARD OF REVIEW

This Court reviews an award of restitution under the UCL and FAL to determine whether it is supported by "substantial evidence," that is, to confirm that the district court did not abuse its broad equitable discretion in an "arbitrary or capricious" manner. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 699 (2006); *In re Neurontin Mktg. & Sales Practices Litig.*, 748 F. Supp. 2d 34, 93-94 (D. Mass. 2010) (under the California UCL, "an award of restitution must not be 'arbitrary and capricious'") (citing *Colgan*).

In reviewing the "substantial evidence" supporting the restitution award, the district court's findings of fact may not be set aside unless they are

- 9 -

"clearly erroneous." Fed. R. Civ. P. 52(a)(d). Mixed questions of fact and law that are "primarily factual" are reviewed for clear error. *Sparkman v. C.I.R.*, 509 F.3d 1149, 1155-1157 (9th Cir. 2007); *United States v. Norris*, 428 F.3d 907, 914 (9th Cir 2005). Under the deferential "clear error" standard, affirmance is required unless the record prompts a "'definite and firm conviction that a mistake has been committed.'" *Newby v. F/V Kristen Gail*, 937 F.2d 1439, 1444 (9th Cir. 1991) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The findings and rulings affirmed by this Court's decision on the prior appeal in this case, *Gutierrez I*, are not to be reviewed on this appeal (nor are they at issue). "The prudential law-of-the-case doctrine precludes one panel of an appellate court from reconsidering questions that have already been decided on a prior appeal in the same case." *Duran Gonzales v. U.S. Dep't of Homeland Sec.*, 712 F.3d 1271, 1277 (9th Cir. 2013); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) (a "decision should continue to govern the same issues in subsequent stages in the same case").

## ARGUMENT

I.    **This Court Should Affirm the District Court's Award of Restitution**

A.    **This Court Previously Affirmed the District Court's Ruling that Wells Fargo Violated California's Consumer Protection Laws and Ruled that Restitution Could Be Awarded to Class Members Consistent With Federal Law**

In the first appeal, this Court upheld the district court's finding of class-wide liability for Wells Fargo's deceptive conduct in violation of the UCL and FAL. *Gutierrez I* at 727.[1]  The Court held that the claims based on deceptive conduct are not preempted under the NBA, though the claim under the UCL's "unfair" prong is. *Id.* at 726-727.  The Court expressly ruled that the class of over one million California consumers, properly certified under Fed. R. Civ. P. 23, may be entitled to restitution based on the affirmed findings of Wells Fargo's deceptive conduct. *Id.* at 728 ("Restitution is available for past misleading representations.").  Accordingly, the Court remanded the case to the "district court [which] will be in a position to determine whether . . . restitution is justified by the pleadings and the evidence in this case." *Id.*

---

[1] This Court did not expressly refer in *Gutierrez I* to Plaintiffs' FAL claim, but as the district court noted after remand, the affirmance of the finding of class-wide liability under the FAL "is implicit" in the Court's opinion.  ER 3.  *See also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 n.8 (2009) ("A violation of the UCL's fraud prong is also a violation of the false advertising law.").

**B.    On Remand, the District Court Adhered to *Gutierrez I* By Basing A Restitution Award on the Affirmed, Non-Preempted Claims**

On remand, the district court determined, based on the pleadings and the evidence, that restitution should be awarded pursuant to the affirmed liability of Wells Fargo for its deceptive conduct. ER 1-16. Based on the evidence adduced at trial, the district court entered a judgment awarding the class approximately $203 million in restitution. ER 226-227. The district court's restitution order after remand, although "reinstating" the prior judgment in the same dollar amount, was nonetheless predicated solely upon Wells Fargo's deceptive conduct found at trial and affirmed on appeal, and expressly not based upon any prior finding that Wells Fargo's posting order was "unfair" under the UCL. ER 13.

At trial, Plaintiffs alleged that Wells Fargo's practice of re-ordering consumers' debit card transactions from their naturally occurring chronological order into a high-to-low dollar order generated excessive instances of overdraft fees. Plaintiffs asserted that Wells Fargo's adoption of the high-to-low posting order violated applicable principles of good faith, giving rise to liability under the "unfair" prong of the UCL. Plaintiffs also asserted that the statements and actions of Wells Fargo were likely to deceive Plaintiffs and the class about its use of high-to-low posting order, and likely to mislead them to believe that it posted transactions in chronological order, giving rise to liability under the "fraudulent" prong of the UCL and under the FAL. After the trial, the district court found class-

wide liability for all three claims, and entered judgment for restitution of approximately $203 million "for all claims on which plaintiffs prevailed and liability was established." PER 1-2. Because this Court held that one of the claims on which Plaintiffs prevailed at trial was preempted under the NBA, it vacated the original judgment and remanded for the district court to determine what, if any, restitution should be awarded under the non-preempted claims. *Gutierrez I* at 728.

On remand, the district court found:

> Even though liability may not now be predicated on the posting method itself [*i.e.*, under the "unfair" prong of the UCL], the result is the same. The harm from Wells Fargo's affirmative misrepresentations came in the form of unexpected overdraft fees—the same harm wreaked by the unfair practice of manipulating posting method.

ER 13. Hence, the judgment after remand was entered in the same amount as was entered in the original judgment.

That the post-remand judgment was equivalent to the original judgment was dictated by the nature of the affirmed claims, the evidentiary record at trial, and indeed the central predicate of the original judgment itself—that "chronological posting of these transactions [ ] most closely track depositors' expectations" fostered by Wells Fargo's affirmative misrepresentations. ER 102.

The evidence at trial focused on Wells Fargo's affirmatively misleading statements about its posting order and their impact on customers. ER 102 ("A main theme of plaintiffs' case, however, is that the bank promoted the

- 13 -

expectation that debit cards would post *chronologically*.") (emphasis in original). Consequently, the district court chose a measure of restitution reflecting the differential between the overdraft fees actually incurred, in every account held by a class member during the class period under Wells Fargo's high-to-low ordering, and the (lesser) overdraft fees that would have been incurred had Wells Fargo used the chronological ordering that it led the class to believe it was using. ER 70-72, 87-89, 102. This differential represented the excess overdraft fees which equates to the benefit Wells Fargo derived from its deceptive misconduct. *Ibid*.

On remand, the district court acknowledged that only the statutory deception claims remained, and that its task was to determine what restitution, if any, was appropriate based on the affirmed claims. It concluded that the applicable substantive law of the UCL and FAL and the trial record continued to support the same measure of restitution.[2] As the district court explained:

> The [original post-trial] Findings held that the appropriate measure of damages from the *resequencing scheme* was to restore the class members to a position consistent with their reasonable expectations induced by the affirmative misrepresentations.
>
> #

---

[2] As confirmed on remand, the original restitution award was not based *only* on the "unfair" prong claim, but rather was awarded for each aspect of the misconduct for which class-wide liability was established at trial. ER 13,102-103. *See also* PER 1-2 (judgment awarding restitution on "all claims on which plaintiffs prevailed and liability was established in the August 2010 findings"); ER 10.

> [I]t is. . .unnecessary to predicate liability on the posting order and resulting overdraft charges. Because Wells Fargo misrepresented the posting order and overdraft charges to its customers, the appropriate form of restitution is to restore the unexpected charges to Wells Fargo's customers. This is exactly the calculation performed by plaintiffs' damages expert report.

ER 13-14 (emphasis original). In other words, the original restitution amount remained the appropriate amount even though not all of the claims that supported the award originally were affirmed on appeal.

Although on appeal Wells Fargo continues to assert that the district court on remand entered restitution based on the "unfair" UCL claim rejected by this Court, the district court expressly stated the exact opposite to avoid any confusion or contrary suggestion:

> This order is not penalizing Wells Fargo for a practice protected by federal preemption. Instead, it is penalizing Wells Fargo for affirmatively misleading the class as to what the practice was, namely engaging in a practice likely to mislead the class to believe that processing would be done in chronological order when, in fact, processing was done in high-to-low, non-chronological order.

ER 14.

Wells Fargo suggests that *any* restitution that would require it to return fees assessed pursuant to its posting practice must be preempted. Wells Fargo misses the point: the restitution award is not based on any specific posting order, but rather on Wells Fargo's fraudulent representations about the posting order it actually employed. This is the clear holding of *Gutierrez I* which Wells

- 15 -

Fargo confuses:  state law challenges to the selection of a posting order are

preempted; state law challenges concerning the misrepresentation of the posting

order are not.  *Gutierrez I* at 723-727.[3]

Further, Wells Fargo offers no reason or authority for its supposition

that two related categories of conduct—here, Wells Fargo's high-to-low ordering,

and its contrasting misrepresentations of chronological ordering—could not each

lead to the same harm—here, overdraft charges that class members would not

likely reasonably expect.[4]

*Gutierrez I* held that the NBA does *not* immunize Wells Fargo from

monetary liability for affirmatively deceiving customers regarding its chosen

posting order.  *See Gutierrez I* at 727-728 (finding that the NBA and regulations

thereunder do not "regulate[] deceptive statements vis-a-vis the bank's chosen

---

[3] Wells Fargo argues that *Gutierrez I* established the "legality" of its high-to-low ordering, and therefore it cannot be made to return those fees.  (Opening Br. at 22-26.)  Of course, the decision did no such thing, but instead held only that certain state law challenges to the selection of a posting order are preempted.  Whether the actual practice in and of itself is "legal," is a matter for the regulators.

[4] It is common that different claims may result in the same or a similar harm, leading to the same damages or restitution.  *See, e.g., In re Outsidewall Tire Litig.*, 748 F. Supp. 2d 543, 550 (E.D. Va. 2010), *aff'd in relevant part, Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292 (4th Cir. 2012); *Quigley v. Rosenthal*, 327 F.3d 1044, 1074 (10th Cir. 2003).  Contrary to Wells Fargo's suggestion, the fact that one of those claims may not be cognizable does not negate the possibility for recovery under the other claim.  *See, e.g., Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-179 (2000) (while the statute of limitations barred recovery of some wages under Labor Code section 1194, such wages could still be pursued under the UCL which has longer limitations period); *Coleman v. Tennessee*, 998 F. Supp. 840, 846 n.6 (W.D. Tenn. 1998); *Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991).

posting method," and holding that "[r]estitution is available for past misleading representations" under the affirmed claims).  In fact, as this Court previously noted, the OCC has expressly warned national banks that the consequences of engaging in this sort of deceptive conduct can include "'monetary judgments'" under the UCL.  *Id*. at 726 (citing OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, 2002 OCC CB LEXIS 16, 2002 WL 521380, at *1 (Mar. 22, 2002)).

Nonetheless, Wells Fargo improperly seeks to expand this Court's prior preemption ruling to preclude relief for claims that this Court explicitly held were *not* preempted.  That state law may not be used to enforce a good-faith requirement as to Wells Fargo's choice of posting order does *not* mean that Wells Fargo can lie to its customers about its posting order with impunity.

On remand, consistent with *Gutierrez I*, the district court did not regulate Wells Fargo's posting order or impose a remedy for its choice of posting order, as Wells Fargo incorrectly implies.  Rather, the district court properly imposed liability for Wells Fargo misleading its customers, conduct that is decidedly *not* protected by federal law and *not* the subject of exclusive federal regulation.

For that reason, Wells Fargo's reliance on *Brown v. Kerr McGee Chemical Corp.*, 767 F.2d 1234 (7th Cir. 1985), is misplaced.  In *Brown*, the court

found that the requested injunction would require the removal of radioactive waste and would thereby interfere with the exclusive authority of the Nuclear Regulatory Commission to decide how best to dispose of such waste. *Id.* at 1242. Here, the relief awarded does not mandate any posting order, it simply prohibits Wells Fargo from making affirmative misrepresentations and penalizes it for past misrepresentations, which does not conflict with the purposes of the NBA or the OCC regulations in any way. *Gutierrez I* at 726. Unlike in *Brown*, where the waste could not physically be separated between radioactive and non-radioactive waste, Wells Fargo can choose a posting order without lying to its customers about the order it chooses.[5]

The district court properly tailored its post-remand restitution order on the UCL and FAL deception claims that survived preemption, just as this Court instructed it to do.

C.    **The District Court Properly Exercised Its Broad Discretion to Fashion a Restitution Award Which This Court Reviews Only To Determine Whether It Is Based Upon "Substantial Evidence"**

Once, as here, violations of the UCL and FAL have been proven, the district court has "very broad" discretion in fashioning orders for equitable restitution to further the legislative goals of deterring future violations and

---

[5] Wells Fargo's reliance on *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004), is similarly misplaced. *Davila* stands for the principle that the substance of a claim dictates whether it is preempted. *Id.* at 214. The claims affirmed in *Gutierrez I* are substantively different from the claims that were held to be preempted.

preventing wrongdoers from retaining ill-gotten gains. *See, e.g., Tobacco II*, 46 Cal. 4th at 312, 320 (remedies authorized by UCL and FAL are equitable); *Cortez*, 23 Cal. 4th at 180; *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992); *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 449-451 (1979).

The statutory text of the UCL's and FAL's remedial provisions empower the trial courts to "make such orders or judgments. . .as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of" the conduct which violated the statute. Cal. Bus. & Prof. Code §§ 17203, 17535; *Cortez*, 23 Cal. 4th at 177 n.10 (the remedial provisions of the UCL and FAL are construed the same). The "general equitable principles underlying" the UCL and FAL "as well as [their] express language arm the trial court with cleansing power to order restitution to effect complete justice." *Fletcher*, 23 Cal. 3d at 449. These broad powers derive from the statutes' goals of "protecting the general public against unscrupulous business practices" and "deterring unfair business practices in an expeditious manner." *Tobacco II*, 46 Cal. 4th at 312. A trial court's discretionary exercise of its equitable powers under the UCL and FAL is afforded substantial deference. *See People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 530-533 (2002).

Appellate courts review trial courts' discretionary exercise to award equitable restitution under the UCL and FAL only to determine whether

"substantial evidence" in the record would reasonably support it. *Colgan*, 135 Cal. App. 4th at 700. Under the UCL, "an award of restitution must not be 'arbitrary and capricious.'" *In re Neurontin*, 748 F. Supp. 2d at 93 (citing *Colgan*). The "substantial evidence" standard articulated by the California Court of Appeal in *Colgan* is functionally the same standard articulated by the California Supreme Court in *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.*, 21 Cal. 4th 352, 361 (1999), where the court held that the award must not be "arbitrary, capricious [and] entirely lacking in evidentiary support." *See also People v. Carbajal*, 10 Cal. 4th 1114, 1125 (1995) (cited in *Colgan*) (there must be a "factual and rational basis for the amount of restitution ordered"); *Bowers v. Bernards*, 150 Cal. App. 3d 870, 873 (1984) ("[W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion*.") (emphasis original); *Cf. Toscano v. Greene Music*, 124 Cal. App. 4th 685, 691 (2004) (damage award not supported by "substantial evidence" only if "no reasonable interpretation of the record supports the figure" awarded).

California law is in accord with United States Supreme Court precedent. A "trial court is vested with broad discretionary power; appellate

review is correspondingly narrow." *Lemon v. Kurtzman*, 411 U.S. 192, 200

(1973). "[T]he task of weighing and balancing the contending factors is peculiarly

one for the trial judge, who can explore all the facets of a case. As we have noted,

that assessment merits substantial deference on review." *Curtiss-Wright Corp. v.*

*Gen. Elec. Co.*, 446 U.S. 1, 12 (1980); *Hutto v. Finney*, 437 U.S. 678, 688 (1978)

(a trial court's exercise of its equitable power "is entitled to special deference").

Given the latitude and deference afforded trial courts, appellate review of orders

for equitable restitution is limited. In a similar context, this Court has stated that a

"district court has broad authority under the FTC Act to 'grant any ancillary relief

necessary to accomplish complete justice,' including the power to order restitution.

We review the district court's grant of equitable monetary relief for an abuse of

discretion." *FTC v. Stefanchik,* 559 F.3d 924, 931 (9th Cir. 2009); *see also Grosz-*

*Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001) ("When

a district court's remedy takes the form of an equitable order, we review that order

for an abuse of discretion.").

Courts uniformly hold that "substantial evidence" of the amount the

defendant "may have acquired" through violations of the UCL and FAL can be

calculated as the difference between the value of the goods or services the

defendant represented and the value of the goods or services the defendant actually

delivered, and such amounts are subject to restitution to restore the *status quo*

*ante.  See Colgan*, 135 Cal. App. 4th at 699-700; *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009); *Ogden v. Bumble Bee Foods, LLC*, 2014 U.S. Dist. LEXIS 565, *49-52 (N.D. Cal. Jan. 2, 2014); *Thurston v. Bear Naked, Inc.*, 2013 U.S. Dist. LEXIS 151490, 29-32 (S.D. Cal. July 30, 2013); *Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031, *36-41 (C.D. Cal. Jul. 1, 2013); *Ries v. Ariz. Bevs. United States LLC Hornell Brewing Co.*, 287 F.R.D. 523, 531-532 (N.D. Cal. 2012); *Ewert v. eBay, Inc.*, 2010 U.S. Dist. LEXIS 108838, *32-35 (N.D. Cal. Sept. 30, 2010); *see also Fletcher*, 23 Cal. 3d at 447-452 (permitting plaintiff to seek class-wide restoration of excess interest paid when defendant calculated interest rate in manner that was different than advertised).  For example, in *Ewert*, the defendant misrepresented the "active" length of plaintiffs' online auction listings.  2010 U.S. Dist. LEXIS 108838, at *2-4.  The court measured restitution as the difference between the value of what defendant promised (reflected in the listing fees actually paid) and the value of what defendant delivered (a pro rata reduction of the fees paid according to the listing time actually delivered).  *Id.* at *32-35; *see also Thurston*, 2013 U.S. Dist. LEXIS 151490 at *29-32.

The district court here followed the same approach.  Wells Fargo represented checking account services as having particular attributes— chronological posting.  Wells Fargo delivered checking account services with less favorable attributes—high-to-low posting.  The recognized measure of restitution

- 22 -

under the UCL and FAL for such misrepresented services is the difference between the value of the services as promised and the value of the service delivered. By delivering services not-as-represented, Wells Fargo acquired from the members of the class more overdraft fees than if it had delivered the services as-represented. Therefore, the members of the class were "[a]ctual direct victims of unfair competition [who] may obtain restitution." *Korea Supply Co.* 29 Cal. 4th at 1153. The additional overdraft fees which "may have been acquired" by Wells Fargo by virtue of its conduct in violation of the UCL and FAL were once in the possession of the class members, and therefore the proper subject of restitution under the UCL and FAL. *Id.* at 1149.[6]

The restitution award here comports with the U.S. Supreme Court's recent decision in *Comcast Corp. v. Behrend*, because the district court tailored the restitution award directly to the theory of recovery under the claims affirmed by this Court and to the substantive law of the UCL and FAL. *Comcast Corp. v. Behrend*, 133 S. Ct.1426 (2013); (Opening Br. at 26.) Several courts have reaffirmed the appropriateness, post-*Comcast*, of measuring restitution in FAL and UCL deception cases by comparing, as was done here, the value of what the

---

[6] Here, the funds Wells Fargo acquired from the checking accounts of the members of the class are the proper object of restitution under the UCL and FAL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) ("[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.").

defendant promised to the valued delivered.  *See, e.g., Thurston*, 2013 U.S. Dist.

LEXIS 151490 at *29-32 (consistent with *Comcast*, plaintiff in false advertising

case "may seek some amount representing the disparity between their expected and

received value"); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 U.S. Dist.

LEXIS 1640, *37-40 (N.D. Cal. Jan. 7, 2014); *Ogden*, 2014 U.S. Dist. LEXIS 565

at *49-52; *Guido*, 2013 U.S. Dist. LEXIS 94031 at *36-44.

> The district court's order for restitution was a proper exercise of the
broad discretion granted to it under the UCL and FAL.  This Court must review the
restitution award for an abuse of that discretion, which in the context of the UCL
and FAL means that it must determine whether there was "substantial evidence" in
the record that would reasonably support the award, giving substantial deference to
the district court's view of the credibility of the witnesses and the weighing of the
evidence.

### D.    The District Court Based The Measure Of Restitution Upon "Substantial Evidence."

> Following *Gutierrez I,* it was within the district court's discretion to
award class-wide restitution, so long as the amount awarded was not arbitrary and
capricious.  *Gutierrez I* at 729-730; *Colgan*, 135 Cal. App. 4th at 697-698.  The
district court's restitution award measured the difference in overdraft fees actually
charged based on high-to-low ordering, and the chronological ordering that Wells
Fargo led class members to believe it used.  ER 13-14.

1.    **"Substantial Evidence" Warranted the District Court's Award of Restitution Based Upon The Reasonable Expectations Of The Class Fostered By Wells Fargo's Misleading Statements**

After hearing all of the evidence at trial, the district court found that Wells Fargo's representations likely deceived class members into believing that their debit card transactions would be deducted from their accounts in a chronological order, and that its practice of posting high-to-low contravened those representations. ER 70-72, 87-89. The trial evidence focused significantly on Wells Fargo's representations to class members concerning its posting order, the misleading nature of those representations, and their likely impact on customers.[7] On appeal, this Court held that that "the district court's finding that Wells Fargo

---

[7] Plaintiffs introduced extensive evidence regarding Wells Fargo's marketing literature, brochures, online account information, and other materials that misrepresented to its customers that debit-card transactions would be deducted from their accounts "automatically" and "immediately," in the order transacted, and that these representations were broadly disseminated to the point of being pervasive. ER 70-72, 87-89; *see also, e.g.,* PER 559-561, 545, 553, 556, 513, 517, 521, 525, 527, 533, 536, 539, 547, 549, 567; PER 309, 312, 343-348, 360-62. Among other places, these misrepresentations were included in materials customarily provided to customers when they opened their accounts. ER 71. Plaintiffs further introduced evidence that Wells Fargo's misrepresentations were likely to deceive customers, including testimony from the representative plaintiffs, both of whom read and relied upon Wells Fargo's misrepresentations, and testimony from a financial literacy expert. ER 30, 32, 38, 70-72, 96-97; PER 307, 308-311, 357-58, 363-66. Wells Fargo had evidence admitted which it offered in defense of the statutory deception claims, including evidence which it tried to use to establish that the representations were not misleading, that some representations were not broadly disseminated, that customers were supposedly "on notice" of its true practice, and that customers were not likely to be deceived by the misrepresentations. PER 77, PER 84-92, 94, 98; PER 45-56, 58-60, 62-64; PER 420-427, 439-450.

made misleading statements is *amply supported* by the court's factual findings," which supported the conclusion that such misleading statements "'reinforced the expectation that transactions were covered in the sequence made.'" *Gutierrez I* at 729-30 (emphasis added) (quoting ER 89). Accordingly, it is the law of this case that "substantial evidence" existed for the district court to base its restitution award upon a method employing the value of a chronological posting order. *Arizona*, 460 U.S. at 618; *Duran Gonzales*, 712 F.3d at 1277.

### 2. "Substantial Evidence" Warranted the District Court's Specific Measure of Restitution

The district court insisted upon, and eventually admitted, evidence based on each and every transaction during the entire class period for over one-million accounts in the class. This allowed a determination of the difference between the amount of overdraft fees Wells Fargo assessed under the actual practices it employed, versus the amount of overdraft fees it would have assessed had it posted transactions chronologically as promised. ER 102-106; PER369-419; PER 579; PER 110-201.

Plaintiffs drew evidence directly from Wells Fargo's database systems of records containing the transactional data for every Wells Fargo California customer during the entire class period—that is, not just the transactional data for the class members, but rather the data for *every* California customer for the three year, seven and one-half month class period. PER 369-419. From this vast body

of data, Plaintiffs' expert, Arthur Olsen, identified accounts where multiple overdrafts occurred in a single day, and therefore presented possible instances where the implementation of various posting sequences could result in differing instances of overdrafts. For all accounts showing multiple overdraft fees in a single day, Mr. Olsen could re-sequence the posting order of that day's transactions in any order, while carrying a running ledger balance for the account in order to identify the point in the posting order where the account showed a negative balance, triggering an overdraft instance for that transaction and any subsequent transactions. Comparing the instances of overdrafts for a day's re-sequenced transactions, as compiled by Mr. Olsen, with the instances of overdrafts actually posted by Wells Fargo for that day, yielded a "differential" between the overdraft fees Wells Fargo actually assessed that day and the overdraft fees that would have been triggered under any given alternative posting order. By programming queries of the database containing Wells Fargo data, Mr. Olsen performed this analysis, and generated these "differentials," on an account-by-account basis for each banking day for the entire class period. ER 102-104; PER 371-389; PER 110-201, PER 211-297.

Plaintiffs introduced evidence showing the aggregate "differentials" for all affected customers under several alternative re-ordering scenarios, based on the analysis of all customers' data. (The raw results of Mr. Olsen's analyses in

their non-aggregated form retained identifying information for each account.  PER 387-89, 419).  These alternative scenarios presented "differentials" resulting from comparisons to versions of low-to-high sequencing and chronological sequencing. ER 102; PER 573-585.[8]

Based upon the evidence at trial, the district court determined that employing "a posting order that mostly closely tracks a chronological posting order" would "most closely track" the expectations of the class members as fostered by Wells Fargo's misrepresentations.  ER 102.  It therefore ruled that among the alternative posting scenarios presented at trial, it would select the alternative that best represented a chronological posting order to contrast with Wells Fargo's actual practices.  The district court chose a chronological scenario

---

[8] The district court's findings in this regard merit quoting:  "This order finds that plaintiffs' expert Arthur Olsen has convincingly shown that it is entirely practical to re-run the computerized data in storage for each class members' account and determine how many overdrafts were added by the high-to-low practice for debit-card transactions during the class period.  Indeed, he has already done so, using various alternative posting sequences.  This has been done by him on an account-by-account, day-by-day, and transaction-by-transaction basis, using the bank's own real-world data.  Court orders were needed to provide him access to this data, but—after much work and time—this order finds that Expert Olsen has done a professional and careful job in laying out the impacts of various alternative posting protocols.  This work has not only demonstrated that it is possible, in considering relief and restitution, to add back to depositors' specific accounts the amounts that were wrongfully taken by Wells Fargo, using posting protocols that this order finds would have tracked the ordinary and reasonable expectations of depositors."  ER 102-103.

labeled "Scenario 2A," which yielded a differential of overdraft fees in the amount

of $202,994,035.46, and entered restitution in this amount.[9]

### 3. The District Court's Use of a Chronological Comparison to Wells Fargo's Actual Posting Order Was Based Upon "Substantial Evidence"

While the district court noted that a "main theme" of Plaintiffs' case

was "that the bank promoted the expectation that debit-card transactions would

post chronologically," it is also true that a main theme of Wells Fargo's defense

was that chronological posting was not feasible.  PER 77-78, 91-93.  The parties'

overt dispute concerning the justification and method for potentially employing a

chronological posting order permeated the trial on the merits and as a result, there

was substantial, relevant evidence properly admitted on the issue.

The district court's findings and rulings adopting the specific

chronological posting alternative, Scenario 2A, was based upon "substantial

evidence," and well within its discretion.  To start, evidence revealed the details of

the high-to-low posting order that Wells Fargo actually employed during the class

period.  In summary, for all transactions processed each day for each account,

Wells Fargo first posted credits, then priority debits, and then other debit

transactions as a group in high-to-low order as follows:

---

[9] As stated, the restitution amount represented a differential, not a return of *all* overdraft fees.  In fact, Wells Fargo's total overdraft fee revenue from California customers during the class period was approximately $1.77 billion.  PER 572.

(1) credits;

(2) "priority" debits (*i.e.*, cash withdrawals and equivalent transactions) in high-to-low order;

(c) all other debit transactions (including debit card transactions, checks, and ACH)  in high-to-low order.

PER 109; ER 39.  As is evident, Wells Fargo "batch" posted debit card transactions with other transactions, such as checks and ACH, and ordered those batched transactions together, high-to-low.

In presenting an alternative chronological posting sequence, debit card transactions needed to be removed from the "batch," re-sequenced chronologically, and then reinserted in with the remaining posted transactions (credits, priority debits, checks and ACH) which were left in the exact order that Wells Fargo posted them throughout the class period.  ER 103; PER 109.  (The "credit" and "priority debits" groups remained in the same order.)  The district court heard evidence concerning whether to post the chronologically re-ordered debit card transactions before or after checks and ACH, an issue hotly contested at trial.[10]

Wells Fargo offered evidence at trial advocating a "checks/ACH first" alternative on the basis that customers' checks *may* be *written* earlier in time than

---

[10] Wells Fargo's Opening Brief makes the blatant misrepresentation that "*the undisputed evidence* presented at trial showed that chronological order is best approximated by posting checks ahead of debit card transactions." (Opening Br. at 46, emphasis added).  The issue was heavily contested, and in fact literally disputed in the parties' competing proposed findings of fact and rulings of law. PER 43B.

some debit cards that post the same day.[11]  Plaintiffs' competing evidence showed, however, that sequencing debit cards first was more consistent with chronological posting because, by definition, all debit cards are authorized (*i.e.*, honored) earlier in time than all checks and ACH that post on the same day.[12]  That is because authorization of debit card transactions occurs at the time of the transaction and such transactions are always posted after authorization, whereas checks are only authorized at the time of posting.  Thus, in terms of the chronology of the authorization of the transactions, debit cards necessarily precede checks in time.

Revealingly, evidence showed that when Wells Fargo implemented a quasi-chronological posting method in two other states, it programmed its systems to use "the date the check is accepted/processed by the bank" as the operative "transaction date" for purposes of chronologically sequencing checks vis-à-vis other transactions.  For debit card transactions, by contrast, the systems were programmed to use the date "the item was authorized" (*i.e.*, the time of purchase).  PER 509.  Wells Fargo explained to its personnel that this method was designed "so transactions will be posted to accounts in an order that more accurately reflects the order in which they are conducted." PER 509; PER 353-56.  The inconsistency between Wells Fargo current criticism of the analysis adopted by the district court

---

[11] PER 482-83, 491-95, 496-501.

[12] PER 349-350, 428-29, 432-33, 434, 436-37, 438, 569; *see also* Wells Fargo's Opening Br. at 5 n.1.

and its own treatment of checks in these other states reveals the disingenuousness of its argument.

Other evidence showed posting debit cards first was consistent with customers' understandings that check transactions did not clear when they wrote the checks, in contrast to debit card transactions which Wells Fargo represented would clear "immediately" and "automatically" at the time of purchase.[13]  The evidence further showed that Wells Fargo *itself* did not even view posting checks/ACH first as a viable option.[14]

As for ACH transactions, Wells Fargo does not even pretend to offer any basis for placing them before debit cards.  Its own expert declined at trial to opine about the proper placement of ACH, and conceded that the date the customer initially sets up a future ACH payment is not the appropriate date to use.  PER 496-501.

The district court also had to make a series of decisions as to how to best address gaps in the data provided by Wells Fargo, which made it impossible to

---

[13] *See* PER 463 ("Q Do you think that Wells Fargo knows about the checks when they're written? A No. Q Do you think that Wells Fargo knows about them once they're submitted to Wells Fargo? A Yes."); PER 479 ("Would available balance take into account any checks you've written? A No.  Q And why is that? A Because it takes time for them to go through."); PER 318, 320, 325, 326-31; *See also, e.g.*, PER 566 (distinguishing "writing a check" by telling consumers, "[r]emember, the money comes right out of your checking account the minute you use your debit card"); *see also generally* ER 70-72.
[14] PER 469-70.

replicate perfect chronological posting, and other disputed issues.  On all of these

issues, the district court considered evidence from both sides to:

- Address the minority of debit-card transactions for which Wells Fargo failed to retain the time of the transaction.  ER 104.  Wells Fargo argued this limitation in its data precluded the use of any chronological alternative scenario.[15]  Plaintiffs presented alternative analyses where these transactions were posted before and after the other debit cards.[16]  Rather than penalize the class for Wells Fargo's data deficiencies, the district court found that the placement of these non-time-stamped transactions made little difference in the aggregate.  ER 104.[17]

- Account for "reversals"—*i.e.*, where Wells Fargo refunded fees charged—so Wells Fargo received credit for such reversals.  ER 104-105.  Perfect adjustment was not possible because Wells Fargo's data failed to link each reversal to a specific fee charged.[18]  Plaintiffs presented two alternative methods for applying reversals using the data available.[19]  Plaintiffs advocated for the "LIFO" method.[20]  Wells Fargo advocated for the 30-day method, which the district court adopted.[21]

- Evaluate the proposed method for reducing restitution to account for where class members left the bank with a negative balance in their account.  Wells Fargo did not challenge the methodology applied by Plaintiffs' expert, and the district court determined the method appropriately reduced restitution to account for this factor.[22]

The district court's adoption of the "Scenario 2A" measure, over the other

chronological scenarios presented, was the product of its decisions on these issues.

---

[15] PER 91-92.

[16] *See, e.g.,* PER 575, 579.

[17] *See, e.g.,* PER 575, 579, 410-413.

[18] PER 386, 484.

[19] PER 372, 386-88.

[20] PER 67.

[21] ER 104; PER 484; PER 93.

[22] ER 104; PER 387.

Wells Fargo offered expert testimony, through Alan Cox, to broadly attack Plaintiffs' suggested chronological scenarios, arguing that they failed to account for each individual class member's actual reliance on Wells Fargo's deceptions. Dr. Cox even offered alternative restitution measures of his own, based on sample analyses, opining that they better reflected the extent of class members' actual reliance, which Wells Fargo then used to propose lower measures of restitution. PER 485-88, 489-90, 502-05; PER 94. *All* of this evidence offered by Wells Fargo was admitted and considered by the district court. Wells Fargo does not cite a single bit of evidence that it tried to, or wanted to, introduce but was not allowed to introduce at trial on these issues (or, for that matter, on any other issue).

Further, the restitution award only measures the impact of the value Wells Fargo represented but failed to deliver—here, the class's payment of excess overdraft fees, and thus the amounts "wrongfully taken" from them. (Opening Br. at 46-47.) In certain instances, that impact may result in excess fees incurred on other types of transactions, but nonetheless the sole cause for such an impact is the sequencing of debit card transactions. If Wells Fargo's posting of debit card transactions in non-chronological order caused some customers to be charged unexpected overdraft fees on checks and ACH transactions, then restitution of those fees is warranted by the record.

On appeal, Wells Fargo criticizes the district court's restitution award because it failed to measure a "true chronological posting." (Opening Br. at 45-47.) The standard, however, is not whether the measure adopted is *perfect*, but rather, whether it is rational and based on evidence in the record. *Colgan*, 135 Cal. App. 4th at 699-700. The district court adopted the comparator posting sequence that, based on substantial evidence, most reasonably approximated a chronological posting sequence. While only shortcomings of Wells Fargo's own system of record prevented a more precise chronological sequencing, the measure need not be precise. *Comcast*, 133 S.Ct. at 1433 ("[c]alculations need not be exact."). Rather, the measure is appropriate if there is "a factual and rational basis for the amount ordered." *Colgan*, 135 Cal. App. 4th at 700-701.

Accordingly, the analysis selected by the district court was reasonable in light of the evidentiary record, and appropriately fit the facts of the case in terms of measuring restitution by comparison to a chronological posting order which tracks what class members reasonably expected based on Wells Fargo's misrepresentations. That another finder-of-fact might have made different choices regarding how best to deal with gaps in the data or other issues, and might have reasonably chosen a different alternative scenario for measuring restitution here does not make the district court's choice arbitrary or capricious.

## II.  Wells Fargo Fails To Articulate Any Meritorious Basis To Reverse The Restitution Awarded Upon The Substantial Evidence At Trial

Wells Fargo advances various criteria for alternative measurements for restitution under the guise that they are legally required.  These arguments have no merit.  Moreover, when scrutinized, they are revealed to be merely Wells Fargo's preferred measurements for restitution because they would result in a lower restitution award.  But, as none of the proposed alternatives are legally required, they offer no basis for reversal of the district court's restitution award.

### A.  The District Court Measured Restitution Consistent With the UCL and FAL

#### 1.  Wells Fargo Improperly Attempts to Impose a Causation and Reliance Requirement On Restitution Awards Under the UCL and FAL

Wells Fargo argues for reversal on the ground that Plaintiffs did not prove the amount "the class would have kept but for the misrepresentations." (Opening Br. at 35).  Wells Fargo cites no authority to support this proposition. Indeed, Wells Fargo seeks to impose the requirements of individualized reliance and causation, directly contrary to the established law of the UCL and FAL.

The California Supreme Court has repeatedly confirmed that where, as here, a defendant engages in pervasive deceptive conduct that is *likely* to deceive a large group of consumers, the statutes' express language permits recovery "without proof that the funds were lost as a result of actual reliance on the defendant's deceptive conduct."  *In re Vioxx*, 180 Cal. App. 4th at 131 (citing

*Tobacco II*, 46 Cal. 4th at 320); *see also Fletcher*, 23 Cal. 3d at 453 (court has "authority to order restitution without an individualized showing on the knowledge issue if the court determines that such a remedy is necessary 'to prevent the use or employment' of the unfair practice at issue in this case"); *Bank of the W.*, 2 Cal. 4th at 1267; *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020-1021 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1970 (2012). Wells Fargo nevertheless suggests that a likelihood to deceive is only sufficient to establish class-wide liability, and not enough to support an award of class-wide restitution.

That same argument was rejected by the California Supreme Court in *Fletcher*, 23 Cal. 3d at 449-451; *see also Tobacco II*, 46 Cal. 4th at 320 (*Fletcher* remains good law).[23] *Fletcher* was a class action addressing a bank's misleading statements that it charged a "per annum" interest rate, when it actually charged interest based on 360 days. *Id.* at 447. Citing the statute's language, the California Supreme Court held:

> Contrary to defendant's assertion, [the FAL] authorizes
> restitution not only of any money which has been
> acquired by means of an illegal practice, but further,
> permits an order of restitution of any money which a trial
> court finds "*may have been* acquired by means of any . . .
> [illegal] practice." *This language, we believe, is
> unquestionably broad enough to authorize a trial court to*

---

[23] The very cases that Wells Fargo cites recognize that *Fletcher* remains good law and that causation need not be proven to warrant class restitution under the UCL. *See Colgan*, 135 Cal. App. 4th at 698; *In re Vioxx*, 180 Cal. App. 4th at 131; *Pfizer, Inc. v. Superior Court*, 182 Cal. App. 4th 622, 631 (2010).

> *order restitution without requiring the often impossible showing of the individual's lack of knowledge of the fraudulent practice in each transaction.*

*Id.* at 451 (emphasis added in part).  Restitution promotes justice because:

> To permit the retention of even a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement of the law is to be achieved.  One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom.

*Id.* (citation and internal quotation and editing marks omitted); *see also Kraus v. Trinity Mgmt. Servs, Inc.*, 23 Cal. 4th 116, 125 (2000); *Corbett v. Superior Court*, 101 Cal. App. 4th 649, 668 (2002) (noting that "preventing the company from benefiting from its wrongfully obtained profits" comports with "the deterrent purpose of the UCL").

Similarly, in *Fremont Life*, the defendant argued that across-the-board restitution to the class of the full premium charges was improper "without proof that all consumers were deprived of money or property as a result of" the misconduct.  *Fremont Life*, 104 Cal. App. 4th at 531.  The court rejected this argument, noting that the "'general equitable principles underlying [the FAL] as well as its express language arm the trial court with cleansing power to order restitution to effect complete justice,'" and that the defendant's attempt to impose a causation requirement "directly contradict[ed] the holding of *Fletcher*."  *Id.* (citing *Fletcher*).

The district court acted well within its discretion under applicable law in awarding class restitution here without requiring proof of individualized causation or reliance.

> **2.    Wells Fargo's Novel, Alternative Measurement for Restitution Is Not Recognized Under Applicable Law, Nor Does It Demonstrate That the District Court Abused Its Discretion**

On this second appeal, and for the first time in this litigation, Wells Fargo argues that the district court was legally required to measure restitution under the hypothetical circumstance that Wells Fargo never made the misleading statements it in fact made.  (Opening Br. at 31-36.)  In other words, Wells Fargo asserts that the district court improperly based the restitution award on a comparison between its actual posting order and the represented, chronological posting order, and instead should have based the award on speculative assumptions about what class members' conduct may have been had no misleading statements been made.  *Id*.  Wells Fargo's argument is fallacious.

First, Wells Fargo is estopped from introducing this argument at this late stage.  *AlohaCare v. Hawaii*, 572 F.3d 740, 744 (9th Cir. 2009) (absent "exceptional circumstances" arguments raised for the first time on appeal are deemed waived).  Wells Fargo never proposed its novel "but for" causation theory during the trial, on the first appeal, or in the district court following remand.  It cannot do so for the first time now.

Second, Wells Fargo's approach would turn decades of false advertising law on its head, as courts have *consistently* held that damages and restitution in false advertising cases can be measured by comparing, as the district court did here, the value of what was represented to the value actually delivered. *See supra* Section I.C & D.  Wells Fargo does not cite a single false advertising case (and Plaintiffs have found none) where the court applied or endorsed the novel approach Wells Fargo now advocates.

*Colgan* does not support Wells Fargo's novel argument.  In *Colgan*, the plaintiff established that the defendant misrepresented its products as being "Made in the USA."  *Colgan* did *not* suggest that the trial court was required to analyze how customers might have changed their behavior had the "Made in the USA" label not been included on the packaging.  Rather, the court reasoned that a proper measure of restitution would compare the value of the product as represented to the value of the product actually delivered.  *Colgan*, 135 Cal. App. 4th at 699-700.  Here, the district court employed the same type of measurement endorsed by *Colgan:*  it measured the value (in this case the cost to plaintiffs) of the actual product delivered (high-to-low posting) with the value (the costs to plaintiffs) of the product advertised (chronological posting), yielding a "differential" between the two values (costs), *i.e.*, less overdraft fees.  As in *Colgan* and other false advertising cases, the "consumer impact" and "advantage realized

by" Wells Fargo are thus properly measured based on the difference between what class members were promised (chronological ordering) and what they received (high-to-low ordering). *See Colgan*, 135 Cal. App. 4th at 699-700; *Fremont Life*, 104 Cal. App. 4th at 531-533.

Nor does Wells Fargo successfully distinguish *Fremont Life*, which rejected the very same argument it advances here. There, the court affirmed the full restoration of the challenged premium charges, regardless of how the class members may or may not have behaved differently but for the deception. *Fremont Life*, 104 Cal. App. 4th at 531-533. The expert in *Fremont Life* did not perform a causation-based calculation, nor was there any analysis of how class members' actions would have been different had the provision at issue not been deceptive. Rather, the amount of restitution awarded for each class member was based on the full amount of the premium charge (plus interest) without regard to whether the deception at issue may have "caused" some different amount of harm or how the customer would have acted differently "but for" the deception. *Id.*

As set forth above, restoring the *status quo ante* in context of the UCL and FAL is achieved by restitution delivering the difference between the value promised and the value delivered. *Colgan*, 135 Cal. App. 4th at 698 (quoting *Fletcher*, 23 Cal. 3d at 452) ("[a] court of equity may exercise its full range of powers 'in order to accomplish complete justice between the parties, restoring as

necessary the *status quo ante* as nearly as possible.'"). *See also In re Vioxx*, 180 Cal. App. 4th at 131 ("The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution.") (citing *Cortez*, 23 Cal. 4th at 174). Wells Fargo's reliance on *Sharabianlou v. Karp*, 181 Cal. App. 4th 1133 (2010) to argue to the contrary is misplaced. *Sharabianlou* is not a false advertising case and did not arise under the UCL or FAL. Rather, it involved an action by plaintiff to rescind a real estate contract. The discussion regarding available remedies and "restitution" in *Sharabianlou* is specific to the contract rescission context, and the case provides no basis for deviating from how courts have consistently interpreted *status quo ante* and measured restitution in UCL and FAL deception cases. *Id*. at 1144-1145.

Here, the restitution measure represents a reasonable measure of both the consumer impact and the advantage realized by Wells Fargo—i.e., the amounts Wells Fargo "may have acquired" by its misconduct—by appropriately comparing what Wells Fargo promised customers, pursuant to its representations, to what it delivered to them.

### B. Wells Fargo Improperly Seeks to Require An Inquiry Regarding Class Members' Natural Expectations

Although this Court has affirmed that Wells Fargo's statements likely deceived the class, Wells Fargo argues that certain individual class members should not be permitted restitution if they naturally expected chronological posting

such that Wells Fargo's misrepresentations only reinforced their expectation, thereby requiring individualized inquiries of expectations.

The notion that the extent of Wells Fargo's liability for those misrepresentations varies based on whether Wells Fargo initially put a customer in the dark or pushed them further into the shadows, is absurd. If anything, Wells Fargo's deliberate exploitation of class members' natural expectations made their misleading statements all the *more* egregious. ER 89 ("Wells Fargo affirmatively reinforced the expectation that transactions were covered in the sequence made while obfuscating its contrary practice.").

People may have different understandings that predate their encounter with a false statement, but that does not make that statement any more or less false. Once, as here, a set of representations are objectively determined to be false, and, as here, those representations are of a sufficiently pervasive nature that they are "likely to deceive" an entire class, then, as here, restitution is properly awarded to the entire class. Wells Fargo's contrary suggestion flies directly in the face of the language and purpose of the UCL and FAL, as consistently interpreted for decades by *Fletcher* and its progeny.

Wells Fargo's argument is similar to an argument rejected in *Fremont Life*, where defendant argued that across-the-board restitution would be a "windfall" to class members who were not actually deceived. Rejecting this

argument, the court held that class-wide restitution was justified and proper under the UCL, even if reliance was not uniform throughout the class, in light of the deterrence goal of the statute. *Fremont Life*, 104 Cal. App. 4th at 532. Here too, it was sufficient for the district court to find that the representations were likely to deceive customers, a finding which this Court has already affirmed. *Gutierrez I* at 729.

The cases that Wells Fargo cites do not support a different conclusion. In *Pfizer*, the court rejected class certification because the "grossly overbroad" class proposed by the plaintiff consisted largely of consumers who "were never exposed" to the challenged misrepresentations. 182 Cal. App. 4th at 631-32. *Pfizer* says nothing about how class restitution is measured under the circumstances presented here, specifically, that the misleading statements were so pervasive that a classwide deception has been affirmed on appeal, nor does it remotely suggest that the availability of restitution depends on class members' natural expectations. *Princess Cruise Lines, Ltd. v. Superior Court* concerned only the standing of the *named plaintiffs* under Cal. Bus. & Prof. Code § 17204. 179 Cal. App. 4th 36, 43-44 (2009); *Tobacco II*, 46 Cal. 4th at 316-318 (section 17204 standing requirement only applies to representative plaintiffs). This Court has already affirmed that the named plaintiffs relied on Wells Fargo's misrepresentations and had standing to serve as class representatives to pursue

- 44 -

relief for Wells Fargo's pervasive misrepresentations to the class. *Gutierrez I* at 728.

### C.  The District Court Properly Compared The Value Received to the Value Promised

Wells Fargo argues that the district court disregarded the value of services the class members received.  Not so.  What class members received was a package of services that included high-to-low ordering of their debit card transactions.  What class members were promised was that same package of services but with a different ordering.  The differential calculated and adopted as the basis for the district court's restitution award appropriately accounts for all "services" on both sides of the equation.

Wells Fargo argues that the district court's restitution measure did not take into account the "value" of the "service" of authorizing and covering transactions which resulted in an overdrawn account.  (Opening Br. at 39.) However, Wells Fargo cites no evidence, and offers no reasoning, that those services were tied to whether or not transactions were ordered chronologically, as promised, or high-to-low, as deceptively done.  Further, the restitution measure's calculation of the "differential" left all values the same, except the value of the ordering of transactions (thereby measuring the value of what was promised but not delivered).  To the extent Wells Fargo suggests there is *additional* value in having transactions posted in a less favorable manner than it promised, that has

already been rejected by this Court. *Gutierrez I* at 729 ("we are hard pressed to agree that any class member would prefer to incur multiple overdraft fees"); ER 52-53 ("posting debit card transactions in high-to-low order confers no benefit upon Wells Fargo's customers").

　　　　*In re Vioxx*, cited by Wells Fargo, is inapposite. In that case, the court found that calculating the value of a replacement drug would require an individualized inquiry into the physical attributes of the class members to determine what the appropriate equivalent medication would be for each class member. *In re Vioxx*, 180 Cal. App. 4th at 131, 136. By contrast, here, the value of what class members received (a package of services with high-to-low ordering) is known, and the value of what class members were promised pursuant to Wells Fargo's pervasive misrepresentations (the same package with chronological ordering) was subject to calculation, and in fact has been calculated for each class member using the bank's objective pertinent account data.

　　　　Wells Fargo's attempt to use the filed-rate doctrine to argue the district court was foreclosed from awarding restitution here, is misguided. The filed-rate doctrine "presumes" that customers have knowledge of the prices of services being provided, based on the fact that such information is "open for public inspection" in the form of publically-filed tariffs. *See Day* and *Tucker*, cited by Wells Fargo. The doctrine requires carriers to charge the rates for services as

stated in the public tariffs, and insulates them from consumer suits for monetary recovery as long as they do so, "on the premise that a consumer who pays the filed rate has suffered no injury." *Day v. AT&T*, 63 Cal. App. 4th 325, 328-329 (1998). Restitution was unavailable in *Day* because the customers paid for the services the provider was obligated to provide, and that the customers were deemed to have known they would receive, because of the publicly-filed tariff. *Id*. at 339-340.

The filed-rate doctrine, *Day*, and *Tucker* have no application here. Wells Fargo did not file information about its true posting practice in a public tariff, and there is no presumption that customers have knowledge of the practice, as with the filed-rate doctrine. Moreover, even under the filed-rate doctrine, carriers are immune from monetary claims only if their services and rates match the information publically filed. Here, the information Wells Fargo disseminated about its posting practice misrepresented its true practice. ER 70-72, 87-89. This Court has already ruled that while Wells Fargo's posting order itself cannot be challenged under state law, restitution for its misrepresentations about the chosen posting order is available under the UCL and FAL. *Gutierrez I* at 728. Wells Fargo's argument that because its chosen posting order itself cannot be challenged, no restitution can be awarded for misrepresentations about it, would negate that holding in *Gutierrez I*.

**D.    Wells Fargo Failed to Establish That Class Members Were "On Notice" of the Practice it Affirmatively Misrepresented**

Wells Fargo argues that, notwithstanding its pervasive campaign of misinformation, which persisted throughout the class period, class members learned of Wells Fargo's true practice, and that the district court was required to limit the restitution award to reflect this supposed acquired knowledge.

Wells Fargo fails to cite a single case where a court has limited restitution for deceptive conduct under the UCL or FAL in the manner Wells Fargo suggests was required here. To the contrary, as discussed above, both the language of the statutes themselves and controlling case law plainly authorized the district court to award restitution here without engaging in this sort of individualized reliance analysis. *Fletcher*, 23 Cal. 3d at 350-351; *Tobacco II*, 46 Cal. 4th at 312, 320; *Fremont Life*, 104 Cal. App. 4th at 531-532.[24]

Moreover, the entire premise for Wells Fargo's argument—*i.e.*, that class members were supposedly "on notice"—was something Wells Fargo tried to establish, but *failed to establish*, at trial. Far from finding that class members were

---

[24] Wells Fargo's reliance on *Tucker* is misplaced. In *Tucker*, the evidence failed to show common exposure to the alleged misrepresentations sufficient to warrant class certification, and that the defendant's true practice was in fact disclosed in materials that plaintiff alleged were deceptive. *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 221 (2012). Unlike the defendant in *Tucker*, here, Wells Fargo cannot cite any evidence that it made class-wide disclosures of its actual practices. Further, this Court has already affirmed the district court's certification of the class and its findings, following trial, that class members were exposed to and relied upon Wells Fargo's misrepresentations. *Gutierrez I* at 728-730.

"on notice," the district court found that Wells Fargo "obfuscated" its true practice and class members were likely to be deceived by Wells Fargo's misrepresentations, a finding affirmed by this Court on appeal. *Gutierrez I*, 728-730 (affirming that Wells Fargo's misleading statements were likely to deceive the class in part because it had been "obfuscating" its actual practices). The trial included extensive evidence showing that Wells Fargo intentionally obfuscated its high-to-low posting practice, including by making the deliberate decision not to inform customers about the practice when it was adopted. PER 301, 302-305, 306, 473; *see also* ER 55 (finding "the bank took pains to obfuscate this practice"); ER 32-38, 55, 57, 64, 68-70, 81, 89; *Gutierrez I* at 729-730 (affirming district court's findings).

For example, while Wells Fargo introduced evidence to try to establish that its monthly account statements put class members "on notice" of the truth,[25] the district court found that class members could not discern from the statements "how the bank came up with its number of overdrafts." ER 31; *see also* ER 69; PER 319, 323-24, 359, 458-461. Similarly, Wells Fargo introduced evidence to try to establish that the overdraft notices it sent to customers put them "on notice," however the evidence showed that these statements included no such

---

[25] PER 84.

information and instead encouraged customers to sign up for "overdraft protection" service, yet another revenue source for the bank. PER 507.

Wells Fargo also tried to establish at trial that customers could learn about the actual posting order by reviewing the balance and transaction information available to them through Wells Fargo's online banking resource.[26] Far from explaining the high-to-low order, the record showed that the online resource displayed transactions "in chronological order, leading customers to believe the processing would take place in that order." ER 71, 87-88; *Gutierrez I* at 729.

Wells Fargo also tried to establish that customers would have learned that the bank was lying to them about the posting order, based on their experiences, but the district court properly found that the named Plaintiffs and the class lacked any basis for understanding the true practice. ER 30-32, 64, 69-72, 79-81, 88-89.[27]

Wells Fargo cites the one, rare, instance where the district court found an understandable explanation of its actual posting practice, however the district court expressly noted that this particular explanation was only offered "*after the*

---

[26] PER 84, 86, 90.

[27] Wells Fargo's marketing expert, Dr. Simonson, offered merely generalized evidence along the lines of "people learn from their mistakes," which of course fell far short of establishing that class member experience could put them on notice of a practice Wells Fargo was intentionally obfuscating. PER 426-27 . The testimony from Wells Fargo's damages expert, Dr. Cox, lacked any foundation or informational basis whatsoever, and was merely based on what he would expect. PER 485-86.

*fact*." ER 71 (emphasis in original).  After receiving multiple overdraft fees, a small number of vocal, complaining customers received a form letter with a description of the posting order, but these explanations were provided, "after the fact," only to the "angry few lucky enough to qualify."  ER 71.  Although it had the opportunity, Wells Fargo failed to offer any evidence that any class members incurred multiple overdraft fees after receiving these explanations.  If anything, these letters to complainants actually underscore the extent of Wells Fargo's obfuscation, that is, "[t]he very existence of these clear *after-the-fact* explanations further highlights the bank's before-the-fact obfuscation."  ER 68 (emphasis in original).

Accordingly, the district court properly rejected Wells Fargo's proposed alternative restitution measure, which would cut off restitution for each class member once they incurred multiple overdrafts and were therefore, it argued, on notice.  ER 13; *see also* ER 102.  Given the evidentiary record, it was clearly a reasonable exercise of the district court's discretion, under the UCL and FAL, not to adjust the restitution award to account for assumptions about class members supposedly being on notice, when the evidence completely failed to support those assumptions.

### E.   Wells Fargo's Waiver Argument Was Properly Rejected by the District Court

Despite the clear record that the UCL "fraud" and FAL claims for restitution were fully tried, Wells Fargo nevertheless argues that Plaintiffs waived any right to restitution under those claims.  (Opening Br. at 48-50.)  The district court, which presided over the trial and all of the relevant pre-trial and post-trial proceedings, soundly rejected this argument. ER 6-11.  The district court was ideally-suited to make that determination, and its conclusion is entitled to considerable deference.  *See Farfaras v. Citizens Bank & Trust*, 433 F.3d 558, 568 (7th Cir. 2006) ("Having observed the entire trial, the district court was in the best position to determine whether or not" a particular issue was raised at trial); *Cordis Corp. v. Boston Sci. Corp.*, 275 F. App'x. 966, 967 (Fed. Cir. 2008) (noting that "[t]he district court's familiarity with the proceedings in this case puts it in the best position" to determine waiver); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 790 (Fed. Cir. 1995) (trial court in "best position" to determine waiver and whether an issue was tried).

The district court properly found that Wells Fargo's waiver argument cannot be squared with its own conduct and statements before, during, and after trial. ER 6-11.  Indeed, the record, demonstrates that Wells Fargo fully understood in advance of trial that the single email upon which its waiver argument is now based was limited to the issue of *legal damages* for the *common law* fraud and

misrepresentation claims, and that it was clear to the parties and the district court—before, during, and after trial—that Plaintiffs continued to seek restitution for the statutory deception claims.  ER 7-11.  Wells Fargo's own statements, responding to Plaintiffs' proposed findings regarding the measure of class monetary relief, make this clear:

> [P]laintiffs conceded before trial that no award of class damages (*as opposed to restitution*) would or could be sought [citing the email in question]. Nor could class-wide damages be awarded, given the absence of class-wide proof of actual injury from any alleged misrepresentation. For a non-UCL claim—damages may not be recovered under the UCL—any such showing must include, inter alia, proof of classwide dissemination of the same or similar misrepresentations, as well as class-wide proof of actual reliance and resulting causation of injury.

PER 65 (emphasis added, parenthetical in original).

Other contemporaneous statements by Wells Fargo reveal the same. *See* ER 6-7; PER 203. (stating that "the only monetary relief available to the class is restitution" under the UCL "which permits only equitable remedies," and citing the email in question to assert that "Plaintiffs have admitted that they lack evidence of damages for the class for any *legal claim* and that *no such claim* will be presented at trial") (emphasis added); PER 205-10 (Plaintiffs, in a pre-trial proposed order, state an intent to seek restitution for the statutory deception claims, and Wells Fargo does assert waiver); PER 61 (Wells Fargo fails to assert waiver in

response to Plaintiff's post-trial proposed finding regarding restitution for FAL claim).

**F.    Wells Fargo Fails to Establish A Due Process Or Rules Enabling Act Violation**

Wells Fargo's due process challenge fails because it misinterprets the substantive law of the UCL and FAL, re-litigates issues conclusively decided in *Gutierrez I*, and in any event is based upon the false premise that it was denied the opportunity to present evidence. The district court afforded Wells Fargo every opportunity, of which Wells Fargo actually availed itself, to present its defenses that class members could not have been deceived by its misleading statements, and its corresponding argument that restitution should be mitigated to extent of the lack of causation.

**1.    Wells Fargo Seeks to Impose Novel And Substantive Legal Requirements Inconsistent With The Well-Settled Law Of The UCL and FAL Under the Guise Of A Due Process Argument**

Wells Fargo argues that the class-wide restitution award violates the Due Process Clause and the Rules Enabling Act which, it asserts, afforded it an opportunity to present evidence regarding absent class members' individual reliance on its misleading statements, the individual impact of the misleading statements on absent class members, and the actual harm directly resulting from

the reliance and impact on each individual absent class member.[28]  Wells Fargo's

argument would impose requirements not currently recognized by law, which if

required, would effectively foreclose the possibility of classwide relief under laws

designed to provide it.

The substantive law of the UCL and FAL reveals the fallacy of Wells

Fargo's argument:  neither statute requires proof of individual reliance, causation,

or injury beyond establishing standing of a named class representative.  *See, e.g.,*

*Stearns*, 655 F.3d at 1020-1021; *Tobacco II*, 46 Cal. 4th at 318-320 ("relief under

the UCL is available without individualized proof of deception, reliance and

injury").  Class restitution may be awarded "without proof that the funds were lost

as a result of actual reliance on the defendant's deceptive conduct."  *In re Vioxx*,

180 Cal. App. 4th at 131; *see also Tobacco II*, 46 Cal. 4th at 320; *Fletcher*, 23 Cal.

3d at 450–451 (2009); *Stearns*, 655 F.3d at 1020-1021.  Class-wide restitution may

be ordered under the UCL and FAL as long as "members of the public are likely to

be deceived."  *Tobacco II*, 46 Cal. 4th at 312, 320; *Fletcher*, 23 Cal. 3d at 451-453.

Under the guise that the class action procedure employed here deprived it of the

opportunity to present proof regarding those issues, Wells Fargo in essence seeks

---

[28] Opening Brief at 51-54 (arguing it should have been able to prove the "actual
amount of harm," whether class members could "reasonably rely" on the
misleading statements, and whether individual class members were "exposed" to
the misleading statements).

to overturn the substantive law of the UCL and FAL by imposing the elements of reliance, causation, and injury, as requirements for a restitution award under the UCL and FAL.[29]

   While the class representatives were required to (and did) prove detrimental reliance in order to have standing, absent class members were not required to prove actual reliance or injury. Rather, the remedial provisions of both statutes "key[] on the wrongdoing" of the defendant, providing for restoration of all funds the wrongdoer "'may have acquired'" by its misconduct, as a means to ensure the wrongdoer does not retain any ill-gotten gains and as a deterrent against future misconduct. *Stearns*, 655 F.3d at 1020-1021; *Fletcher*, 23 Cal. 3d at 450-451; *Fremont Life*, 104 Cal. App. 4th at 532. Thus, the individualized "defenses" that Wells Fargo argues it was denied the opportunity to fully pursue did not address any actual element of proof. *See Stearns*, 655 F.3d at 1021 n.13 ("California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy."); *Fletcher*, 23 Cal. 3d at 450-451; *cf. Iorio v. Allianz Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 118344, * 98 (S.D.

---

[29] Wells Fargo waived any such argument in any event, by not raising it in the first appeal in this case. Wells Fargo's classwide liability was affirmed in *Gutierrez I*, and such holding is law of the case, and Wells Fargo cannot now raise the argument that the UCL and the FAL requires proof of these issues.

Cal. July 8, 2008) (rejecting defendant's argument that it had "a due process right to cross-examine each individual class member, raise individualized defenses for each annuity sale, and receive an individualized verdict," given the pervasive nature of the alleged misrepresentations and the "well-established presumption of reliance created by California law" for fraud claims).[30]

This circumstances here are nothing like *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). *Wal-Mart* presented a discrimination claim under Title VII, which expressly specifies evidentiary burdens requiring, *inter alia*, individualized proceedings regarding "the scope of individual relief." *Id.* at 2560-61. The Supreme Court rejected the proposed damages methodology in *Wal-Mart* because it would have bypassed this established process and changed the substantive elements of a Title VII claim. *Id.* Here, by contrast, the substantive law of the UCL and FAL, as consistently interpreted for decades, permit class-

---

[30] The cases cited by Wells Fargo are inapposite. *Pfizer* involved a "grossly overbroad" proposed class consisting largely of consumers who were not exposed to the alleged misrepresentations, *Pfizer*, 182 Cal. App. 4th at 631-632. Likewise, the court in *Cohen v. DirecTV, Inc.* denied certification because there was insufficient evidence of class-wide exposure to the alleged misrepresentations. 178 Cal. App. 4th 966, 979 (2009). The same was true in *Tucker*, 208 Cal. App. 4th at 221. None of these intermediate appellate decisions even purport to modify the holdings of *Fletcher* and its progeny, and they have no application where, as here, there is an affirmed finding, after trial, of class-wide exposure and likelihood of deception. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330-331 (2011), and *Princess Cruise*, concerned the standing of representative plaintiffs under Cal. Bus. & Prof. Code § 17204, not the award of restitution for absent class members where, as here, the class representatives have standing and there is a showing of class-wide exposure and likelihood of deception.

wide restitution without requiring individual proof of reliance, causation, or injury. *See Stearns*, 655 F.3d at 1021 ("[I]t can hardly be said that the loss is not fairly traceable to the action of the Appellees within the meaning of California substantive law."); *Fletcher*, 23 Cal. 3d at 450-451; *Tobacco II*, 46 Cal. 4th at 320.

Therefore, unlike in *Wal-Mart*, the district court's restitution order in no way altered the elements of proof, or enlarged or modified any substantive rights, of the UCL and FAL. *See In re High-Tech Emp. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 153752, at *183-184 n.22 (N.D. Cal. Oct. 24, 2013) (declining to extend *Wal-Mart* where certification of class would not expand or modify rights under substantive law).

### 2. Wells Fargo's Arguments Are A Thinly Veiled Attempt To Re-litigate Issues Conclusively Decided By This Court in *Gutierrez I*

Wells Fargo advances its "due process" arguments as a means to re-litigate issues that this Court has already conclusively decided. In *Gutierrez I*, this Court affirmed the district court's finding that Wells Fargo was liable to the class under the UCL and (by implication) the FAL. *Gutierrez I* at 726-730; ER 3. This Court affirmed the district court's findings that Wells Fargo misrepresentations were "likely to deceive its customers," and were so "pervasive [in] nature. . .that class members, like the named plaintiffs, were exposed to [them] and likely relied on them." *Gutierrez I* at 729-730. Under well-settled law, these now-established

elements are sufficient to warrant class-wide restitution for deceptive conduct under the UCL and FAL. *Stearns*, 655 F.3d at 1020-1021; *Fletcher*, 23 Cal. 3d at 450-451; *Fremont Life*, 104 Cal. App. 4th at 532.

Wells Fargo cannot be permitted another bite at the apple regarding the issues of class-wide exposure and whether its misrepresentations were "likely to deceive" customers. Those issues were fully tried, and this Court's well-reasoned Opinion in *Gutierrez I* forecloses any attempt by Wells Fargo to re-litigate or re-open the record regarding those issues.

### 3.    Wells Fargo Had Every Opportunity to Introduce Evidence In Support Of Its Defenses

No fewer than five times in its brief, Wells Fargo *claims* that it was denied the ability to present evidence in support of its defenses,[31] but *nowhere* does it cite a single instance in the record where it unsuccessfully attempted to introduce evidence. Well Fargo's vague references fail to provide a proper basis for appellate review under the rules of this Court. Circuit Rule 28-2.5 requires that "[a]s to each issue, appellant shall state where in the record on appeal the issue was raised and ruled on," and that "if a ruling complained of on appeal is one to which

---

[31] *See* Opening Br. at 51 ("the district court denied Wells Fargo the ability to litigate even class-wide defenses"), 51 ("the district court. . .denied Wells Fargo the right to present defenses which it would have been entitled to litigate in an ordinary, non-class UCL action."); 54 ("Wells Fargo's ability to present individualized defenses has been restricted"); 55 (district court "den[ied] Wells Fargo the ability to litigate individual defenses").

a party must have objected at trial to preserve a right of review, e.g., a failure to admit or to exclude evidence. . .the party shall state where in the record on appeal the objection and ruling are set forth." Wells Fargo makes no attempt to comply with the rules of this Court.

In fact, not only did Wells Fargo have the *opportunity* to put on evidence and defenses regarding absent class members, the record shows that Wells Fargo actually *did* put on such evidence. For example, Wells Fargo introduced testimony from absent class members and tried to use that testimony to establish the lack of reliance and causation that it now argues it was foreclosed from presenting. PER 76-77, 81, 85, 462-68, 474-78. Further, Wells Fargo's expert, Dr. Cox, offered an analysis which, in his proffered opinion, better reflected the extent of classwide reliance, because, using only a sample population, it excluded restitution for class members purportedly "on notice" of Wells Fargo's misleading statements. PER 485-490, 502-505. (The district court was well within its discretion to reject that opinion.)

Desperate to make a point, Wells Fargo remarkably cites the instance of a *non-class member* to exemplify the type of facts it should have been able to adduce at trial. Opening Br. at 51; PER 587. Plaintiff William Smith was at one time proposed to represent a class pursuing the "including and deleting" claims, a class which the district court eventually de-certified. PER 13-14, 30-31. While

Mr. Smith did not put forward evidence that he relied on Wells Fargo's marketing materials (unlike Plaintiffs Gutierrez and Walker, whose express reliance on those materials this Court has affirmed), the record shows that he *did* read and rely upon Wells Fargo's online banking "account activity" page, which showed his debit card transactions ordered chronologically. PER 298-99. At trial, Plaintiffs offered evidence of similar statements Wells Fargo made in connection with its online banking, which the district court found to be misleading. ER 71, 87-88. In *Gutierrez I*, this Court expressly referenced these online banking statements in affirming that such misleading statements were likely to deceive Wells Fargo's customers. *Gutierrez I* at 729-730.[32] PER 94.

Wells Fargo had a full opportunity to pursue any defenses it wished to pursue. That it did not make any further proffer on these issues (or any other issue) was its own choice. That alone is fatal to Wells Fargo's "due process" argument. *Sawyers v. Collins*, 986 F.2d 1493, 1498 n.7 (5th Cir. 1993) (rejecting due process argument where appellant could not point to any ruling by district court precluding introduction of evidence, but instead not introducing such evidence was a voluntary decision by appellant); *Chestnut v. Ford Motor Co.*, 445 F.2d 967, 973

---

[32] Wells Fargo also continues to suggest that Ms. Gutierrez did not rely on its misrepresentations, even though this Court has already held that the district court's findings that she did were "well supported by the evidence." *Gutierrez I* at 728; ER 23-32, 97; PER 314-17, 332-342.

(4th Cir. 1971) ("Plaintiff cannot complain about not being allowed to introduce evidence that he never attempted to introduce.").

## III.    The Court Should Affirm The District Court's Injunction

The district court had broad discretion under the UCL and FAL to issue injunctive relief to ensure the "prevention of future harm." *Tobacco II*, 46 Cal. 4th at 320; *see also People v. JTX Tax, Inc.*, 212 Cal. App. 4th 1219, 1257 (2013). The injunction here may only be reversed or modified upon a showing that it constitutes a "clear abuse of discretion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1296 (9th Cir. 1992) (citation omitted).

Far from an abuse of discretion, the district court's injunction directly adhered to this Court's direction in *Gutierrez I*. *Compare Gutierrez I* at 728 (the district court "can enjoin the bank from making fraudulent or misleading representations about its system of posting in the future") *with* ER 16 (enjoining Wells Fargo from making or disseminating "false or misleading representations relating to the posting order of debit-card purchases, checks and ACH transactions in its customer bank accounts").

Consistent with Federal Rule of Civil Procedure 65(d), the injunction identifies its terms specifically and describes in reasonable detail the acts to be enjoined. *See S.C. Johnson & Son, Inc. v. The Clorox Co.*, 241 F.3d 232, 241 (2d Cir. 2001) ("Rule 65(d) does not require the district court to predict exactly what

[the defendant] will think of next or to describe all possible, permissible"

statements the defendant may use) (citation omitted); *Lineback v. Spurlino*

*Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008) (distinguishing injunctions that

merely enjoin a party from violating a statute).  Moreover, it is properly tailored to

the "specific harm alleged" and litigated.  *Skydive Ariz., Inc. v. Quattrocchi*, 673

F.3d 1105, 1116 (9th Cir. 2012); *Gutierrez I* at 726-730 (affirming Wells Fargo's

liability for affirmative misrepresentations about its posting order).

Wells Fargo urges reversal on two grounds.  First, it argues the

injunction is insufficiently specific.  But to justify reversal on this ground, Wells

Fargo must demonstrate that the injunction is "so vague that [it has] no reasonably

specific meaning."  *Gallo Cattle*, 967 F.2d at 1297.  Wells Fargo cannot meet this

burden.  Courts routinely enter injunctions that are similar in scope and language to

the injunction entered here.[33]  Likewise, circuit courts have specifically directed

---

[33] *See, e.g.*, *FTC v. Gill*, 265 F.3d 944, 953 (9th Cir. 2001) (injunction concerning
"making statements to credit reporting agencies that they either knew or had reason
to believe were untrue or misleading, or making or using any untrue or misleading
representation of their services"); *iYogi Holding Pvt. Ltd. v. Secure Remote
Support, Inc.*, 2011 U.S. Dist. LEXIS 144425, at *49 (N.D. Cal. Oct. 25, 2011)
(enjoining defendant from "publishing false, unsubstantiated, or misleading
statements"); *Cook Inlet Region, Inc. v. Rude*, 2010 U.S. Dist. LEXIS 132287, at
*12 (D. Alaska Dec. 13, 2010) (enjoining defendants "from issuing, printing,
stating, or otherwise promulgating . . . any false or misleading statements in any
future proxy or petition solicitations"); *United States v. Hansen*, 2006 U.S. Dist.
LEXIS 90449, at *15-16 (S.D. Cal. 2006) (injunction prohibiting making false or
fraudulent statements "as to any material matter under the federal tax laws" was
not impermissibly vague); *Vondran v. McLinn*, 1995 U.S. Dist. LEXIS 21974, at
Footnote continued on next page

district courts to tailor injunctive relief in the same manner the injunction was tailored here.  *See, e.g.*, *U-Haul Int'l, Inc. v. Jartran*, Inc., 793 F.2d 1034, 1043 (9th Cir. 1986); *L. & J.G. Stickley, Inc. v. Cosser*, 255 F. App'x 541, 544 (2d Cir. 2007).

Moreover, ordinary persons readily understand proscriptions on "false or misleading" statements, making such proscriptions presumably comprehensible to a sophisticated financial institution like Wells Fargo.  *See United States v. Larm*, 824 F.2d 780, 784 (9th Cir. 1987).  And the district court's extensive written findings further put Wells Fargo on notice as to the deceptive conduct that is enjoined.  *See United States v. Philip Morris U.S.A.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009).

Wells Fargo proposes, instead, an infinitesimally-narrow injunction that would proscribe only specific, identified words, and define the precise contexts where Wells Fargo cannot use those particular words.  The injunction Wells Fargo proposes would be "'so narrow as to invite easy evasion,'" *Skydive*, 673 F.3d at 1116 (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193

---

Footnote continued from previous page
*17-18 (N.D. Cal. July 5, 1995) (preliminarily enjoining dissemination of "any false and/or misleading statements" regarding certain issues); *see also TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) ("[T]he court may permanently enjoin defendants from engaging in deceptive marketing or placing misleading statements on DMV.org.").

(1949)), would simply not prevent Wells Fargo from lying to its customers about to its posting order, and thus would seriously undermine the deterrent purposes of the UCL and FAL. *Fletcher*, 23 Cal.3d at 450.

Second, Wells Fargo argues the injunction is overbroad because it enjoins false statements about the posting order of checks and ACH. However, it is well established that federal district "courts have broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *NLRB v. Express Publ'g. Co.*, 312 U.S. 426, 435 (1941); *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990). The narrow conduct proscribed by the district court's injunction falls well within the immediate class of deceptive conduct—lies about the posting order—addressed and found unlawful in this case. Moreover, a narrower injunction would allow Wells Fargo to effectively mislead customers in the future about how debit cards are posted by making misstatements about how checks and/or ACH are posted, given that the three transaction types are being posted to the same accounts.

The injunction here was well within the district court's broad equitable power under the UCL and FAL to issue relief to deter future misconduct.

## IV.   The District Court Incorrectly Denied Pre-Judgment Interest

The district court should have awarded pre-judgment interest under California Civil Code section 3287(a). *Ballard v. Equifax Check Servs*., 158 F. Supp. 2d 1163, 1176-77 (E.D. Cal. 2001) (section 3287 applies to UCL restitution). "It has long been settled that section 3287 should be broadly interpreted to provide just compensation to the injured party for loss of use of money during the prejudgment period." *Gourley v. State Farm Mut. Auto. Ins. Co.*, 53 Cal. 3d 121, 132 (1991). The district court denied pre-judgment interest on the basis that the award here was only capable of being made certain through trial. ER 14; PER 4. However, the restitution here is a function of specific instances of overdraft charges, the individual dollar amounts of which were never in dispute, incurred on specific days. *See Bott v. Am. Hydrocarbon Corp.*, 458 F.2d 229, 232 (5th Cir. 1972) (awarding pre-judgment interest under section 3287(a) where "[t]he jury was not called upon to calculate a disputed wage rate but to decide how many payments at the predetermined rate were not made").

The district court should have awarded pre-judgment interest under California Civil Code section 3288, since justice requires that class members be compensated for being denied, for up to *nine years* and counting, funds that Wells Fargo wrongfully obtained. *In re Pago Pago Aircrash of January 30, 1974*, 525 F. Supp. 1007, 1015-1019 (C.D. Cal. 1981). As a matter of equity, Wells Fargo

should not be permitted to retain its considerable ill-gotten gains without paying interest to the class members from whom those funds were taken.

## CONCLUSION

For the foregoing reasons, the district court's restitution award and injunction should be affirmed, and Plaintiffs' cross-appeal granted.

Respectfully submitted,

_____/s/ Richard M. Heimann_____
Richard M. Heimann
Michael W. Sobol
Roger N. Heller
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
(415) 956-1000

Richard D. McCune
Jae (Eddie) K. Kim
McCUNE & WRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA  92374
(909) 557-1250

*Attorneys for Plaintiffs-Appellees-Cross-Appellants Veronica Gutierrez, et al.*

February 14, 2014

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 16,180 words, as determined by Microsoft Word 2010, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman and 14-point font.


       /s/ Richard M. Heimann
         Richard M. Heimann

February 14, 2014

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiffs-Appellees-Cross-Appellants Veronica Gutierrez, *et al*. state that they are not aware of any related cases.

/s/ Richard M. Heimann
Richard M. Heimann

February 14, 2014

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system of on February 14, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by appellate CM/ECF system.


   __/s/ Roger Heller
   Roger Heller


February 14, 2014

# ADDENDUM:  RELEVANT STATUTES

## California Business & Professions Code § 17200

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

## California Business & Professions Code § 17203

Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.

## California Business & Professions Code § 17500

It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or

disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

## California Business & Professions Code § 17535

Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company, or any other association or organization of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.

Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney, county counsel, city attorney, or city prosecutor in this state in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of this section and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.

## California Civil Code § 3287

(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a

particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

## California Civil Code § 3288

In actions other than contract. In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury.

1160892.1