Nos. 13-16195, 13-16598 & 13-16749

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VERONICA GUTIERREZ, ET AL.,

*Plaintiffs-Appellees-Cross-Appellants*,

v.

WELLS FARGO BANK, N.A.,

*Defendant-Appellant-Cross-Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

# RESPONSE AND REPLY BRIEF FOR DEFENDANT-APPELLANT WELLS FARGO BANK, N.A.

Sonya D. Winner
David M. Jolley
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
(415) 591-6000

Emily Johnson Henn
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
(650) 632-4700

Robert A. Long, Jr.
Mark W. Mosier
David M. Zionts
Colleen E. Roh
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004-2401
(202) 662-6000

*Attorneys for Defendant-Appellant Wells Fargo Bank, N.A.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

ARGUMENT ......................................................................................... 7

I.   The Reinstated Restitution Order Is Inconsistent With *Gutierrez I* Because It Awards Relief For An "Integrated Scheme" That Includes Federally-Protected Conduct. ........................................................ 7

II.  The District Court Deviated From California Law In Reinstating Its Original $203 Million Restitution Award. .................................... 10

     A.   Expectation Damages Are Not Recoverable As Restitution. ............. 11

     B.   Plaintiffs Did Not And Could Not Establish That The Class Lost $203 Million Because Of The Misrepresentations. ................... 16

     C.   California Law Prohibits Restitution When Class Members "Obtained The Full Value Of What Was Paid For" As A Matter Of Federal Law .................................................................. 19

     D.   The Many Class Members Who Had Reasonable Notice That Wells Fargo Did Not Post In Chronological Order Cannot Recover Restitution. .......................................................... 22

     E.   Overdraft Charges On Check And ACH Transactions Were Not "Wrongfully Taken" Because Of Misrepresentations About Debit Cards. ......................................................................... 26

     F.   Plaintiffs Waived Their Claim To Restitution Based On The Misrepresentations ..................................................... 29

III. The Restitution Award Is Inconsistent With Due Process And The Rules Enabling Act. ..................................................................... 32

IV.  The Injunction Is Vague And Overbroad. ...................................... 34

V.    The District Court Properly Denied Pre-Judgment Interest. ....................... 39

CONCLUSION ................................................................................................ 41

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004)................................................................................9

*Brown v. Kerr-McGee Chem. Corp.*,
    767 F.2d 1234 (7th Cir. 1985) ...........................................................8

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)..............................................................................38

*Colgan v. Leatherman Tool Grp., Inc.*,
    135 Cal. App. 4th 663 (2006) ............................................10, 17, 28

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) ...........................................................38

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)....................................................................8, 16

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998) ....................................................*passim*

*Del Webb Communities Inc. v. Partington*,
    652 F.3d 1145 (9th Cir. 2011) ...........................................................34

*E&J Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ...........................................................38

*Elk Grove Unified Sch. Dist. v. Newdow*,
    542 U.S. 1 (2004)..................................................................................20

*Fireman's Fund Ins. Co. v. Allstate Ins. Co.*,
    234 Cal. App. 3d 1154 (1991) ...........................................................39

*Fletcher v. Security Pacific National Bank*
    23 Cal. 3d 442 (1979) .......................................................... 15, 22-23

*FTC v. Gill*,
    265 F.3d 944 (9th Cir. 2001) ...............................................................35

*FTC v. Gill*,
    71 F. Supp. 2d 1030, 1049-50 (C.D. Cal. 1999)..................................35

*Gutierrez v. Wells Fargo Bank, N.A.*,
    704 F.3d 712 (9th Cir. 2012) ("*Gutierrez I*") ..............................*passim*

*Hawkins v. Comparet-Cassani*,
    251 F.3d 1230 (9th Cir. 2001) ...........................................................10

*In re eBay Litig.*,
    No. 07-cv-2198, 2012 WL 3945524 (N.D. Cal. Sept. 10, 2012) .......................12

*iYogi Holding Pvt. v. Secure Remote Support, Inc.*,
    No. C-11-0592, 2011 WL 6291793 (N.D. Cal. Oct. 25, 2011).........................35

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ......................................................................15

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ............................................................15

*Kwikset v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ......................................................................32

*L. & J.G. Stickley, Inc. v. Cosser*,
    255 F. App'x. 541 (2d Cir. 2007) .....................................................36

*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
    104 Cal. App. 4th 508 (2002) ................................................14, 18, 19

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .............................................................23

*McCann v. Coughlin*,
    698 F.2d 112 (2d Cir. 1983) ..............................................................30

*Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*,
    319 F. Supp. 2d 1059 (C.D. Cal. 2003) ..............................................11

*NLRB v. Express Publ'g Co.*,
    312 U.S. 426 (1941) ............................................................38

*Pfizer Inc. v. Super. Ct.*,
    182 Cal. App. 4th 622 (2010) ...................................13, 16

*Philip Morris USA Inc. v. Scott*,
    131 S. Ct. 1, 4 (2010) .......................................................33

*Princess Cruise Lines, Ltd. v. Super. Ct.*,
    179 Cal. App. 4th 36 (2009) ............................................32

*Ries v. Ariz. Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) .....................................12

*S.C. Johnson & Son, Inc. v. Clorox*,
    241 F.3d 232 (2d Cir. 2001) .............................................37

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) .........................................................33

*Skydive Ariz., Inc. v. Qattrocchi*,
    673 F.3d 1105 (9th Cir. 2012) ....................................34, 38

*TrafficSchool.com v. Edriver Inc.*
    653 F.3d 820 (9th Cir. 2011) ...........................................35

*Tucker v. Pac. Bell Mobile Servs.*,
    208 Cal. App. 4th 201 (2012) .....................................*passim*

*U-Haul Int'l Inc. v. Jartran*,
    793 F.2d 1034 (9th Cir. 1986) .........................................36

*United States v. Berger*,
    473 F.3d 1080 (9th Cir. 2007) .........................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .....................................................33

**Statutes**

Cal. Civ. Code § 3287 ............................................6, 39, 40

Cal. Civ. Code § 3288 ............................................6, 39, 40

**Rules**

Fed. R. Civ. P. 65(d) .................................................................................34

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court originally ordered Wells Fargo to restore $203 million in overdraft fees that, the court determined, were unlawfully charged as a result of Wells Fargo's practice of posting debit-card transactions in high-to-low order. On appeal, this Court held that Wells Fargo's posting practice is "a federally authorized pricing decision," and therefore plaintiffs' state-law claims based on Wells Fargo's posting order are preempted by federal banking law. *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 730 (9th Cir. 2012) ("*Gutierrez I*"). This Court vacated the restitution order because it was "predicated on liability for Wells Fargo's choice of posting method." *Id.* Only plaintiffs' misrepresentation claim survived. On remand, the district court's task was to determine the amount of restitution, "if any," that is appropriate for that distinct claim. *Id.*

When the case returned to the district court, the court summarily reinstated its original restitution award without any change. Where $203 million had originally been deemed the amount of harm caused by Wells Fargo's use of a purportedly unlawful posting order, the district court has now decided that misrepresentations about a *lawful* posting order caused the exact same harm. This result is particularly surprising because plaintiffs admitted that their expert, whose calculations are the basis of the award, did "not attempt[] to quantify the amount of

damages or restitution resulting from any classwide misrepresentation-based claims." ER514.

The district court's decision rests on a series of legal errors. In attempting to defend the district court's decision on remand, plaintiffs ignore much of the district court's actual language and reasoning, and advance unconvincing justifications never adopted by the district court. The new award, like the original award, must be vacated.

1. The district court's decision to reinstate the original $203 million award as a purported remedy for the misrepresentations is inconsistent with this Court's decision in *Gutierrez I*. Plaintiffs attempt to defend the district court's decision on the ground that "two related categories of conduct" can "each lead to the same harm." But the district court did not determine that the misrepresentations independently caused $203 million in harm. To the contrary, the court held – in language plaintiffs conspicuously ignore – that plaintiffs suffered harm that was "inseparable" from an "integrated scheme," and that restitution should not be "sliced" to account for the non-preempted and preempted claims that comprise the overall "scheme." *Gutierrez I* forecloses a restitution award that is based in any part on harm from federally-protected conduct, and that is not based on any showing that the harms being remedied were actually caused by the misrepresentations.

2

2. The district court's restitution award also departs from California law in multiple respects.

a. Plaintiffs' measure of restitution – the "difference between what class members were promised" and "what they received" – is not restitution at all, but is instead expectation damages, which are forbidden under the UCL. Courts calculate this differential in restitution cases only to *credit* the defendant for the value of the product supplied and thereby to *reduce* the award. Restitution must still begin with a determination of the amount of money taken because of misrepresentations (*i.e.*, the amount of money that would not have been spent absent the misrepresentations). Where, as here, class members do not buy a product intentionally but rather *inadvertently* trigger a service, a causal link between the misrepresentations and the amount of class-wide harm cannot simply be assumed. California law required plaintiffs to make an evidence-based showing of the aggregate harm experienced by the class. They failed to do so.

b. Plaintiffs never even attempted to calculate the amount of fees incurred because of the misrepresentations. In fact, they conceded that their expert did not perform such a calculation. Moreover, the district court's finding that many class members "naturally assumed" that transactions would post chronologically demonstrates that the misrepresentations did *not* cause the class to incur anything approaching $203 million in fees: absent the misrepresentations,

3

these class members still would have assumed chronological posting, and so would have incurred the same fees. Plaintiffs' only response is that the representations were still false. But that says nothing about the *effects* of the misrepresentations on the class. Plaintiffs are similarly off-base in arguing that *Gutierrez I* preemptively approved the district court's measure of restitution as the law of the case, despite this Court's clear recognition that restitution might not be available at all.

c. When federal law deems a pricing decision legitimate, California courts refuse to award restitution for misrepresentations about that price, even when the misrepresentation claim is not itself preempted. Restitution must be offset by the value received, and when the federally-regulated price of a service is at issue, the customer has "obtain[ed] the full value of what was paid for . . . regardless of whether he or she was improperly induced" to use the service "in the first place." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998). Plaintiffs strain to cabin *Day* to its facts, but its rationale applies equally to the pricing decisions at issue here.

d. Wells Fargo demonstrated that most of the restitution award is attributable to class members who learned by experience that they could not count on lower fees due to chronological posting, and yet continued to incur overdraft fees. Plaintiffs' position that these class members are still entitled to a full refund of fees is flatly inconsistent with California law. Plaintiffs cannot point to

4

anything in the record contradicting the fact that customers can and do learn from experience, just as the named plaintiffs did. Doing the same thing over and over again and expecting a different result is not reasonable; class members who did so cannot claim a new harm from the misrepresentations time after time.

      e. Even accepting the district court's theory that the class should be awarded the benefit of chronological posting, the court erred in basing the calculation on a hybrid posting order in which all checks and ACH transactions post last, regardless of chronological order. Plaintiffs do not defend the district court's justification for this decision. Instead, they argue that debit-card transactions are "authorized" first and should therefore be posted before checks. This theory is not supported by any evidence of what consumers expect.

      f. The absence of record evidence to support a restitution award for the misrepresentations is a direct consequence of plaintiffs' litigation strategy. Before trial, they admitted that their expert did not attempt to calculate harm from the misrepresentations, and waived their claim to restitution on "any" misrepresentation-based claim. The weakness of the evidence plaintiffs marshal for the proposition that this restitution claim remained in the case only underscores the clarity of the waiver, and of the district court's error in disregarding it.

      3. The district court's blanket restitution award, which disregarded evidence that would limit class-wide restitution and denied Wells Fargo the

5

opportunity to present individualized defenses, violates Due Process and the Rules Enabling Act. Plaintiffs are wrong that California allows restitution for class members whom the defendant can demonstrate suffered no harm. Even if it did, however, this Court could not accept and apply such a rule.

4. The district court's injunction is vague and overbroad. In defending the injunction, plaintiffs cite inapt cases and ignore binding precedent from this Court that bars broad injunctions against "false and misleading" speech like the injunction at issue here. The injunction must be vacated because it is insufficiently specific to put Wells Fargo on notice of the speech it prohibits, and because it impermissibly imposes restraints beyond those necessary to offer plaintiffs complete relief.

5. The district court correctly denied plaintiffs' request for prejudgment interest. Section 3287(a) of the California Civil Code does not permit an award of interest where, as here, damages are dependent on a judicial resolution of conflicting evidence, and the district court was well within its discretion to deny interest under Section 3288.

# ARGUMENT

### I.     The Reinstated Restitution Order Is Inconsistent With *Gutierrez I* Because It Awards Relief For An "Integrated Scheme" That Includes Federally-Protected Conduct.

In *Gutierrez I*, this Court held that restitution may not be "predicated on liability for Wells Fargo's choice of posting method," because that choice is governed exclusively by federal law. 704 F.3d at 730. The district court's reinstated $203 million restitution award, like its original $203 million award, nevertheless orders Wells Fargo to refund all of the fees it collected as a result of posting transactions in high-to-low order. Plaintiffs do not attempt to explain how, on the record of this case, the exact same award is required to remedy only the conduct that is subject to state law. Instead, plaintiffs attack a straw man by relying on the generic proposition that "two related categories of conduct" can "each lead to the same harm." Pls. Br. 16. They argue that if preempted conduct causes a particular harm, and non-preempted conduct *independently* causes *an identical* harm, state law can appropriately award a remedy for that harm. The problem with this argument is that it is not what the district court held.

The district court did not hold that Wells Fargo's choice of posting method and the misrepresentations "each led to the same harm." Instead, the court held that the posting method and the misrepresentations were "intertwined" as "elements" of a single "scheme" that "cannot be meaningfully separated into

discrete causes of harm." ER13. Rather than imposing a remedy limited to harms caused exclusively by the misrepresentations, the district court imposed a remedy for the entire "integrate[]d, multi-phase Resequencing Scheme," even though this Court held in *Gutierrez I* that the central elements of that "Resequencing Scheme" (including both the bank's choice of posting order and the adequacy of its disclosure about posting order) were governed exclusively by federal law. ER13. Indeed, the district court even criticized Wells Fargo for asking the court to "slice [the] 'resequencing scheme' into separate practices," *i.e.*, the posting and disclosure practices protected by preemption on the one hand, and the misrepresentations subject to state law on the other. ER12. But separating the harm from the preempted and non-preempted claims was precisely the task before the district court on remand. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (model calculating damages where only one theory of relief remains "must measure only those damages attributable to that theory"); *Brown v. Kerr-McGee Chem. Corp.*, 767 F.2d 1234, 1240 (7th Cir. 1985) (court may not grant relief from "inseparable" harms related to preempted and non-preempted claims).

Remarkably, plaintiffs' brief fails even to address this language in the district court's opinion, and offers no defense at all for the district court's award of relief for an "integrated scheme" that includes federally protected conduct. Plaintiffs also fail to offer any plausible explanation for how the misrepresentations

8

alone caused the class to lose $203 million in fees.  The evidence in this case strongly indicates that the misrepresentations were a relatively small part of the overall "scheme."  Indeed, plaintiffs' brief all but concedes that the putative link between their non-preempted claim and the reinstated remedy is a fiction.  In their view, it is a fiction endorsed by California law, which purportedly allows restitution "without proof" that the funds being returned were actually lost because of the misrepresentations.  Pls. Br. 8.  That approach cannot pass muster under California law.  *See infra* Part II.  Even if it could, however, it would be impermissible in a case suffused with the federal interests recognized by *Gutierrez I*.  A preempted restitution award that is a remedy for federally-protected conduct cannot be saved by simply changing "the particular label affixed" to it.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004).

If *Gutierrez I*'s preemption holding is to have meaning, it must foreclose a restitution award that is (i) based in large part on the harm from federally-protected conduct, and (ii) not premised on any factual showing that the harms being remedied were actually caused by the conduct giving rise to the non-preempted claim.  Because the district court concluded that the harms from plaintiffs' preempted and non-preempted claims are "inseparable," and plaintiffs have not disputed that conclusion, federal law precludes a restitution award in the circumstances of this case.

**II.     The District Court Deviated From California Law In Reinstating Its Original $203 Million Restitution Award.**

In addition to contravening this Court's decision in *Gutierrez I*, the reinstated restitution award flouts several principles of California law. Plaintiffs invite the Court to overlook these principles and defer to the district court's supposed "very broad discretion" to reach any "equitable" result that would "deter[] future violations." Pls. Br. 18-19. That is not the law:

> Section 17203 'operates only to return to a person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice. The intent of the section is to make whole, equitably, the victim of an unfair practice. While it may be that an order of restitution will also serve to deter future improper conduct, in the absence of a measurable loss the section does not allow the imposition of a monetary sanction merely to achieve this deterrent effect.'"

*Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 229 (2012) (quoting *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998)). California appellate courts do not hesitate to vacate restitution awards when the trial court has failed to adequately quantify the amount of harm caused by a misrepresentation. *E.g.*, *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006). An error of law – including in determining the appropriate methodology to calculate restitution – is by definition an abuse of discretion. *Hawkins v. Comparet-Cassani*, 251 F.3d

1230, 1237 (9th Cir. 2001); *see also United States v. Berger*, 473 F.3d 1080, 1104

(9th Cir. 2007) (restitution "methodology is reviewed *de novo*").[1]

## A. Expectation Damages Are Not Recoverable As Restitution.

Plaintiffs make a straightforward plea for damages, not restitution.

Specifically, they assert that Wells Fargo owes them "the difference between what

class members were promised (chronological ordering) and what they received

(high-to-low ordering)." Pls. Br. 41. As Wells Fargo explained in its opening

brief, that is a classic example of "expectation damages" of the kind that cannot be

recovered under the UCL. WF Br. 35-36; *see also Nat'l Rural Telecomm. Co-op.*

*v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1080 (C.D. Cal. 2003) (rejecting

restitution claim where "[p]laintiffs essentially seek to recover expectation

damages for what they believe they would have obtained" had the defendants

"performed in accordance" with contractual promises). If plaintiffs were right that

expectation damages are a proper measure of restitution, California's decision to

prohibit "damages" in UCL actions would be a meaningless exercise in semantics.

Rather than offer a cognizable legal theory that supports their alleged

entitlement to expectation damages, plaintiffs simply assert that this is the usual

---

[1] Quoting a district court sitting in Massachusetts, plaintiffs characterize the
appropriate standard of review as whether the award is "arbitrary and capricious."
Pls. Br. 20. That is not the test, but even if it were, it could not support affirmance
of an award based on legal errors.

measure of restitution under the UCL.  Relying largely on federal district court cases, plaintiffs assert that restitution is often calculated "as the difference between the value of the goods or services the defendant represented and the value of the goods or services the defendant actually delivered."  Pls. Br. 21.  But plaintiffs misconstrue the cases on which they rely.  Far from expanding restitution to amounts not wrongfully taken *because of* misrepresentations, those cases stand for the proposition that, where a plaintiff has received genuine value for his purchase, any restitution award must *credit* the defendant for that value.  For example, in *Ries v. Arizona Beverages USA LLC*, the plaintiffs claimed that they would not have bought an iced tea product had they known it was not "all-natural," and sought restitution of the *entire* purchase price.  287 F.R.D. 523, 531 (N.D. Cal. 2012).  The court held, however, that the plaintiffs could *only* seek the difference in value between what they bought and what they were promised, in order to account for the fact that the products "still had some market value that accrued to plaintiffs."  *Id.* at 532.[2]

What plaintiffs would elevate as the *sine qua non* of UCL restitution – the difference in value between the product as advertised and the product as

---

[2] Notably, in the *eBay* case to which plaintiffs devote the most attention, the court actually revisited the restitution issue, and granted summary judgment to the defendants because the proposed differential between the value represented and the value received was not "a fair estimate of plaintiffs' *actual harm*."  *In re eBay Litig.*, No. 07-cv-2198, 2012 WL 3945524, at *3 (N.D. Cal. Sept. 10, 2012) (emphasis added).

delivered – is in fact the second step in a two-part analysis. The first step requires plaintiffs to establish the amount of money they would not have spent "but for" the misrepresentations. *See Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th 622, 631-32 (2010) (class members not harmed by the misrepresentations "clearly are not entitled to restitutionary disgorgement"); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998) ("[S]ection 17203 operates only to return to a person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice."). When the plaintiff cannot demonstrate this threshold causal link between the defendant's wrongful conduct and the amount of the class's resulting injury – for example, because some class members "did not purchase [the product] because of [the misrepresentations]" – they cannot recover restitution at all. *Pfizer Inc.*, 182 Cal. App. 4th at 632; *see also Tucker*, 208 Cal. App. 4th at 229 (class members who become "aware" of the misrepresented practice, "by disclosure or otherwise, could not be said to be entitled to return of any amounts paid"). Only after overcoming this hurdle does the difference in value between the product as promised and as delivered become relevant. It is not a stand-alone measure of class-wide harm, but only a way to ensure that the award is *offset* by the value received.

When a plaintiff makes an *intentional* decision to purchase a product, the required showing of causation may follow directly from a finding of material

misrepresentations. As in *Ries*, such a plaintiff may be able to show that class

members would not have purchased the product at all but for the

misrepresentations. This case, however, is unlike all of the UCL cases plaintiffs

cite, because it involves a service that typically is triggered *inadvertently*. ER265,

382-83; *see* WF Br. 38. Here, most class members did not intend to overdraw their

accounts at all. In this type of case, a causal link between the misrepresentations

and the amount of class-wide harm is not nearly as straightforward and cannot

simply be assumed.

Thus, the UCL's "but for" causation requirement, which plaintiffs

deem "novel" (Pls. Br. 39), is anything but.[3] The true novelty in this case lies in

plaintiffs' argument that once a single plaintiff establishes standing, the restitution

award need not be based on any causal link between the misrepresentations and the

class's losses. California has relieved UCL plaintiffs of the need to present

"*individualized* proof of harm" to the class, *People ex rel. Lockyer v. Fremont Life

Ins. Co.*, 104 Cal. App. 4th 508, 532 (2002) (emphasis added), but it does not

---

[3] Plaintiffs contend that Wells Fargo's argument on limiting restitution to harms
caused by the misrepresentations is made "for the first time" on appeal. Pls. Br.
39. That is incorrect. *See, e.g.*, Wells Fargo's Supplemental Excerpts of Record 4-
5 (opposition to plaintiffs' motion for judgment on remand explaining that
plaintiffs failed to show "what *specific changes in behavior* [class members']
reliance induced and what specific impact, if any, those changes had on the number
of overdraft fees customers incurred") (emphasis in original).

follow that *no* proof of the actual class-wide harm caused by the misrepresentations is necessary to support restitution.[4]

It is not the law in California that "restitution" may be awarded in amounts bearing no causal connection to what was "wrongfully taken," or to class members who were not actually harmed. *Tucker*, 208 Cal. App. 4th at 229. This point was recognized by *Fletcher v. Security Pacific National Bank*, on which plaintiffs heavily rely: "[t]he fact that *some* members of the class may have been informed of the alleged fraud should not in itself preclude the trial court from affording a remedy for recovery of *those who had no such information*." 23 Cal. 3d 442, 454 (1979) (second emphasis added). Neither *Fletcher* nor any other California authority embraces plaintiffs' startling proposition that class members who in reality were not harmed can nevertheless be awarded "restitution." While California law does not require plaintiffs to make *individualized* showings of the harm experienced by each class member, it does require an evidence-based showing of the aggregate harm the misrepresentations caused to the class.

---

[4] Plaintiffs quote out of context a statement from *In re Vioxx Class Cases* that restitution is available "without proof that the funds were lost as a result of actual reliance on the defendant's deceptive conduct." 180 Cal. App. 4th 116, 131 (2009). As the next sentence makes clear, the court was simply referring to the lack of a need for "*individual* proof of injury." *Id.* (emphasis added). The *Vioxx* court was relying on *In re Tobacco II Cases*, which similarly states only that relief is available "without *individualized* proof of deception, reliance and injury." 46 Cal. 4th 298, 320 (2009) (emphasis added).

**B.    Plaintiffs Did Not And Could Not Establish That The Class Lost $203 Million Because Of The Misrepresentations.**

Plaintiffs are not entitled to a $203 million award that bears no causal relationship to the amount of money the class lost "because of" the misrepresentations.  *Pfizer*, 182 Cal. App. 4th at 632.  Plaintiffs never attempted to calculate, or even present an evidence-based estimate of, the amount of overdraft fees the class would have incurred but for the misrepresentations.  At this stage of the litigation, there is no need for the Court to inquire into whether or how plaintiffs could have established class-wide harm from the misrepresentations (for example, through the testimony of an expert in consumer behavior).  What matters now is that plaintiffs did not even try.  Instead, they sought restitution that is not grounded in any calculation of the harm caused by the misrepresentations.  Whatever the true difference between the fees actually incurred and the fees that would have been incurred had there been no misrepresentations, plaintiffs have provided no reason to believe that $203 million is even a rough approximation of this amount.  In fact, they have *conceded* that their expert was not attempting to calculate the harm from the misrepresentations when he arrived at the $203 million amount.  *See* ER514; *see also Comcast Corp.*, 133 S. Ct. at 1433, 1435 (damages study requires "translation of the legal theory of the harmful event into an analysis of the economic impact of that event," and "must measure only those damages attributable to [the applicable legal] theory").

16

This lack of evidence is enough to defeat plaintiffs' claim to restitution. *See Colgan*, 135 Cal. App. 4th at 698. But in this case there is actually affirmative evidence that the class did *not* suffer a loss of $203 million because of the misrepresentations. The district court found that class members made the "natural assumption" that transactions post chronologically. ER32 (¶59); ER87-89. Anyone making this "assumption" would have incurred the same overdraft fees in the absence of any misrepresentations; as a matter of simple logic, an individual who assumes something to be true will act as if it is true, whether or not she is also told something that tends to confirm her preexisting assumption. If the number of people making this assumption is large – and the district court found that the assumption was a general one – then any restitution calculation that does not take it into account is substantially inflated.

Unable to dispute this straightforward logic, plaintiffs try to change the subject. According to plaintiffs, an individual's preexisting assumptions about posting order do not make Wells Fargo's statements "any more or less false." Pls. Br. 43. That is beside the point. The amount of restitution turns not on the degree of falsity, but on the *effect* the misrepresentations had on class members. Nothing in plaintiffs' brief justifies the district court's decision to ignore its own finding about class members' assumptions, or the common-sense corollary that many class members would have incurred the same fees even without the misrepresentations.

17

Plaintiffs contend that, notwithstanding these flaws, the propriety of the district court's restitution award is already settled. Quoting from this Court's affirmance of *liability* for misrepresentations, plaintiffs leap to the conclusion that "it is the law of this case that 'substantial evidence' existed for the district court to base its restitution award upon a method employing the value of a chronological posting order." Pls. Br. 26. That non-sequitur is contradicted by *Gutierrez I*. In vacating the original $203 million award as "predicated on liability for Wells Fargo's choice of posting method," and remanding for the district court to determine "what relief, *if any*, is appropriate," this Court plainly did not approve the repurposing of the original award as a remedy for the misrepresentations, let alone rule that "substantial evidence" supported such a result. *Gutierrez I*, 704 F.3d at 730 (emphasis added).

Gutierrez I confirmed only that the misrepresentations increased the "magnitude" of the harm experienced by Gutierrez and Walker. *Id.* at 728 n.9. It did not quantify the *amount* of harm the misrepresentations caused to either of them, and it said *nothing* about the harm caused to the class as a whole. Nothing in *Gutierrez I* offers plaintiffs a shortcut to reinstatement of the original restitution award without any sound basis in law or fact.

Plaintiffs are also incorrect that *Fremont Life* justifies the district court's failure to consider the actual class-wide harm from the misrepresentations,

18

and its disregard of the fact that many class members would have incurred the same fees in any event. That decision simply held that, under *Fletcher*'s rule that "individualized proof of harm" is not required, the defendant could not invoke abstract notions of "windfall." *Fremont Life Ins. Co.*, 104 Cal. App. 4th at 532. If this "no individualized proof" rule were really a "no proof" rule, then proof of a material misrepresentation would trigger automatic class-wide restitution – a result California courts have rejected. *See, e.g.*, *Tucker*, 208 Cal. App. 4th at 228 ("Even if we assume that there were . . . common misrepresentation[s] . . . and that the [mis]representations were material, Plaintiffs could not present UCL class claims for restitution."). Moreover, here, unlike in *Fremont Life*, there is clear class-wide *evidence* demonstrating that the restitution award purports to "restore" funds that were not taken "because of" misrepresentations. Ignoring this fact and awarding a grossly inflated sum as restitution was a clear error of law.

### C.    California Law Prohibits Restitution When Class Members "Obtained The Full Value Of What Was Paid For" As A Matter Of Federal Law.

As discussed above, the calculation of restitution under the UCL requires an offset against the price paid for the genuine value that was received. *Supra* pp. 12-13; *see also* WF Br. 39. Applying this principle in cases where, as here, federal law deems a particular pricing decision legitimate, California courts refuse to undertake a restitution calculation that requires second-guessing of that

federal determination. *Day v. AT&T Corp.* squarely held that restitution of a federally-authorized fee is unavailable, even when (i) a defendant has misrepresented the nature of the fee, (ii) the misrepresentation claim is not preempted by federal law, and (iii) a UCL action to enjoin the misrepresentation properly lies. 63 Cal. App. 4th 325 (1998). As *Day* explained, when federal law approves and protects a particular method of calculating a fee, a consumer who is charged that fee "obtains the full value of what was paid for and therefore has given up nothing, *regardless of whether he or she was improperly induced*" to incur the fee "in the first place." 63 Cal. App. 4th at 340 (emphasis added). *Day* is of obvious relevance here, given that both cases involve the confluence of state and federal law where a pricing practice is federally protected, misrepresentations about that practice are not, but the restitution calculation cannot proceed without second-guessing the value received for the federally-regulated service. WF Br. 39-41.

Plaintiffs, however, ask this Court to treat *Day* as little more than "the proverbial excursion ticket – good for this day only." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 25 (2004) (Rehnquist, C.J., concurring in the judgment). In their view, *Day* applies only to one particular kind of pricing decision, telephone rates governed by the Federal Communications Commission and subject to the "filed rate doctrine." They argue that restitution was unavailable in *Day* only

because "[t]he filed-rate doctrine 'presumes' that customers have knowledge of the prices of services being provided," because the rates must be filed with the FCC. Pls. Br. 46. But that was not the court's rationale in *Day* – nor could it have been, given the allegations that the plaintiffs were deceived and therefore did *not* "have knowledge of the prices" actually charged. Instead, the relevant factor for the *Day* Court was that the rates were "presumptively *correct*" as a matter of federal law, and that a restitution calculation considering the true value of the service would "enmesh the trial court" in matters "within the exclusive province" of a federal agency. *Day*, 63 Cal. App. 4th at 338 (emphasis added).

The same principles apply here. Like *Day*, this case involves "a federally authorized pricing decision," *Gutierrez I*, 704 F.3d at 730, which reflects the "presumptively correct" value of the services delivered, *Day*, 63 Cal. App. 4th at 340. As in *Day*, plaintiffs' approach would "enmesh the trial court" in matters "within the exclusive province" of a federal agency, in this case the Office of the Comptroller of the Currency (OCC). *Id.* at 338. Plaintiffs do not dispute that restitution under California law requires the court to account for the value of the services received, but they argue that posting in high-to-low order carries no "additional value" over plaintiffs' preferred posting method. Pls. Br. 45 (emphasis omitted). In making this judgment about the value of different posting orders, however, plaintiffs (and, by adopting their proposal, the district court) "disregard

the OCC's determinations of what constitutes a legitimate pricing decision."
*Gutierrez I*, 704 F.3d at 725.  This is exactly the type of interference with federally
authorized pricing decisions that *Day* forecloses.

> ### D.    The Many Class Members Who Had Reasonable Notice That Wells Fargo Did Not Post In Chronological Order Cannot Recover Restitution.

Wells Fargo established at trial that most of the $203 million amount
ultimately awarded as restitution was attributable to fees incurred by class
members who had notice of the true facts.  The fees these class members continued
to incur cannot be said to have been caused by the misrepresentations.
Approximately 60% of the award would "restore" fees incurred by class members
who, according to plaintiffs' theory, acted in purported reliance on the
misrepresentations *more than ten times*.  ER502; ER505.  That is, after incurring
higher-than-expected overdraft fees because their purported expectations of
chronological posting were not borne out, they did the exact same thing at least
nine more times.  The restitution award cannot stand for this additional reason.

In response to this point, plaintiffs reprise their argument that courts
may order "restitution" to class members whom the defendant can show were not
harmed.  Pls. Br. 48.  That position is not only wrong but inconsistent with
*Fletcher*, the principal authority on which plaintiffs rely.  *Fletcher* recognized that
"some members of the class may have been informed of the alleged fraud," and

22

held only that this fact did not preclude "a remedy for recovery *of those who had no such information*." 23 Cal. 3d at 454 (emphasis added). Neither *Fletcher* nor any other case has adopted the extreme position that restitution remains available to class members who *did* become aware that the statements were false. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (class members who "learned of the [braking system's] allegedly omitted limitations before they purchased or leased the [system]" could not recover under the UCL); *Tucker*, 208 Cal. App. 4th at 229 (restitution unavailable to class members who become "aware of the [misrepresented] practice").

    Beyond repeating their mistaken approach to restitution, plaintiffs offer virtually no defense of the district court's refusal to exclude the fees incurred by class members who were on notice. Plaintiffs rely primarily on the district court's findings that Wells Fargo "obfuscated" its posting practice (Pls. Br. 49) – findings that relate to class members' *original* state of mind before learning through experience that they should not structure their transactions on the expectation of chronological posting. Those findings say nothing about what class members understood, or reasonably should have understood, after repeated experience with overdraft fees.

    The closest plaintiffs come to engaging with Wells Fargo's argument is a single sentence asserting that "the district court properly found that the named

23

Plaintiffs and the class lacked any basis for understanding the true practice."  Pls.

Br. 50.  In fact, the district court never made *any* findings about what class

members who repeatedly incurred overdraft fees knew or should have known.  It

determined only that plaintiff Gutierrez, after reviewing her account statement

showing the single instance in which she incurred overdraft fees, "could still not

decipher the process or order in which the various transactions were posted."  ER

31 (emphasis omitted).  That finding is of no assistance to plaintiffs.

       *First*, whatever a class member could or could not "decipher" about

Wells Fargo's posting order from an account statement, she still was able to learn

from experience that her overdraft fees were much higher than she originally

expected.  ER383.  And in fact, Gutierrez *did* "learn[]" from her overdraft

experience and did not incur overdraft fees because of the misrepresentations

again.  ER260; *see also Gutierrez I*, 704 F.3d at 728 ("extent of the falsity" not

known to Gutierrez and Walker "*until* they incurred hefty fees" (emphasis added)).

Generalizing her experience to the class only confirms (especially in the absence of

any contrary evidence) that repeat overdrafters learned that overdraft fees were in

fact higher than expected, and that the fees they nonetheless continued to incur

were not caused by any misrepresentations.

       *Second*, a class member who is surprised by unexpected fees but

cannot "decipher the [posting] process or order" that led to them is by definition no

longer deceived *by the challenged misrepresentations*. Plaintiffs' theory – the only theory available to them, given this Court's rejection of their non-disclosure claim – is that Wells Fargo caused class members to incur extra fees by *affirmatively* convincing them that their transactions would post chronologically. Even if a class member was unable to specifically determine that transactions posted high-to-low, she certainly could tell that her prior expectation of lower fees based on chronological posting was wrong.

Plaintiffs' contrary position defies common sense, as a simple example illustrates. Suppose a class member overdrafts her account because she expects only one $22 fee, based on chronological posting, but is in fact charged $88 due to high-to-low posting; a month later, she again overdrafts her account expecting a single $22 fee and again is charged $88; and she repeats the same process ten more times, always believing she will be charged $22, and always being charged four times as much. To paraphrase a well-known saying, doing the same thing over and over again and expecting a different result is not reasonable. The district court did not explain, and could not explain, how Wells Fargo can be ordered to "restore" fees incurred by class members who knew or should have known from experience that their original expectations of chronological posting were incorrect, and yet repeated the same pattern of multiple overdrafts anyway.

### E.     Overdraft Charges On Check And ACH Transactions Were Not "Wrongfully Taken" Because Of Misrepresentations About Debit Cards.

Despite its theory that restitution should be based on the overdraft fees class members expected (*i.e.*, fees based on chronological posting), the district court more than doubled the amount of the restitution award by using a posting order that substantially deviates from chronological posting. This alternate order posted all checks and ACH transactions after all debit-card transactions – a non-chronological sequence that the district court *never* found to comport with consumer expectations. Instead, the district court based restitution on an artificial, hybrid posting order, solely on the ground that Wells Fargo had not previously posted checks and ACH transactions first. ER 103; WF Br. 47-48. Notably, plaintiffs do not attempt to defend the district court's reasoning, which had nothing to do with conforming fees to class member expectations – that is, to the purported basis of the restitution award.

Plaintiffs argue instead – without any supporting factual findings – that posting all debit-card transactions first is consistent with chronological posting because debit-card transactions are "authorized" first, even if checks are written much earlier. Pls. Br. 31. That speculative theory is divorced from any common-sense understanding (much less record evidence or findings) of what chronological posting meant to the average consumer. When an individual writes a check, she

may not expect it to post immediately, *see* Pls. Br. 32, but she certainly understands that she has lost control over when the check will be presented for payment. The payee could deposit the check in an hour, a day, a week, or a month. There is no record evidence that a typical customer would expect all of her funds, including those "spent" by the check she previously wrote, to continue to remain available to cover debit-card purchases in the chronological order in which they were made. Neither would she expect the amount of the check to be deducted from her account only as the very last transaction on the day it happened to clear. Yet that is exactly what the restitution award assumes.[5]

A simple example illustrates the oddity of awarding restitution for overdraft fees on check and ACH transactions as a remedy for misrepresentations about debit-card transactions. Suppose a customer has $100 in his account, and on Monday writes a $100 check. The payee happens to cash the check on Thursday morning. Later that same Thursday, the customer makes two debit-card purchases: a $25 purchase at noon, and a $75 purchase in the afternoon. Under Wells Fargo's actual posting process, this scenario would have resulted in two overdraft fees. That is the same number of fees a customer assuming transactions are posted in

---

[5] Similarly, if an individual sets up an ACH transaction to occur on a particular day, she has no basis to expect that the funds set in advance to be deducted will be available all day, and that the ACH transaction will not post until after all debit-card transactions.

chronological order would expect; she would not rely on funds she spent on

Monday to be available to cover her purchases on Thursday.  Yet under the district

court's theory, this individual – who received the exact number of overdrafts she

would have expected, and lost nothing because of any misrepresentations about the

posting order of debit-card transactions – is entitled to restitution:

Illustration

|  | Actual Order | Chronological | Olsen's Hybrid |
|---|---|---|---|
| Starting Balance | $100 | $100 | $100 |
| Transaction 1 | -$100 (Monday check) | -$100 (Monday check) | -$25 (Thursday noon debit-card) |
| Transaction 2 | -$75 (Thursday PM debit-card) | -$25 (Thursday noon debit-card) | -$75 (Thursday PM debit-card) |
| Transaction 3 | -$25 (Thursday noon debit-card) | -$25 (Thursday PM debit-card) | -$100 (Monday check) |
| **Total Overdrafts** | **Two** | **Two** | **One** |
| **Differential** |  | **0 Fees** | **1 Fee** |
| **Restitution** |  | **$0** | **$22** |

There is no logical basis to conclude that such a class member's

induced expectations about chronological posting caused him to incur overdraft

fees on *checks*, and that these unrelated fees were "wrongfully taken" because of

misrepresentations about *debit cards*.  *Colgan*, 135 Cal. App. 4th at 698.  Plaintiffs

miss the point when they argue that restitution is warranted where "Wells Fargo's

posting of debit card transactions in non-chronological order caused some

customers to be charged *unexpected* overdraft fees on checks and ACH

28

transactions."  Pls. Br. 34 (emphasis added).  The district court did not find, and could not have found, that class members incurred "unexpected" fees on checks and ACH transactions because of misrepresentations about an entirely different class of transactions.  California law did not permit the district court to order Wells Fargo to refund those lawful fees.[6]

### F.    Plaintiffs Waived Their Claim To Restitution Based On The Misrepresentations.

The absence of record evidence to support restitution of the fees wrongfully taken *because of the misrepresentations* is a direct consequence of plaintiffs' own litigation strategy.  Before trial, when plaintiffs were focused on their (preempted) claim that Wells Fargo's posting order was "unfair," they expressly conceded that their database management expert had "not attempted to quantify the amount of damages *or restitution* resulting from *any* classwide misrepresentation-based claims."  ER514 (emphases added).

In addition to confirming that Olsen's calculations do not support a $203 million restitution award as a remedy for the misrepresentations, this statement is a clear admission and waiver.  Whatever deference might have been due the district court's interpretation of a more ambiguous statement cannot save

---

[6] Plaintiffs' long tangents on their expert's process, the quantity of evidence he considered, and his approach to "gaps in the data" (Pls. Br. 32-33, 35) have nothing to do with the irredeemable legal defects in the district court's restitution calculation.  There is a vast difference between a restitution measure that is merely not "perfect" (Pls. Br. 35), and one that is legally unsupportable.

plaintiffs' belated attempt to vitiate their clear waiver through revisionist history. *See, e.g.*, *McCann v. Coughlin*, 698 F.2d 112, 123 (2d Cir. 1983) ("We are reluctant to reverse a factual finding [on waiver] by the district court, but if the clearly erroneous standard is to have any significance, we cannot accept a finding that is completely unsupported by the evidence, and, indeed, is contradicted by overwhelming evidence.").

Plaintiffs point to certain statements by Wells Fargo that, read in context, do not dilute the waiver. For example, plaintiffs rely (Pls. Br. 53) on Wells Fargo's statement that plaintiffs "conceded before trial that no award of class damages (as opposed to restitution) would or could be sought." PER65. Wells Fargo made this statement in responding to plaintiffs' request for "class damages," and so stated that only a restitution claim, not damages, remained in the case. PER65. Restitution *on the misrepresentation claim* was not at issue in that exchange; with the focus at that point being plaintiffs' claim for restitution on its substantive challenge to the bank's posting order, there was nothing remarkable in Wells Fargo pointing out that all class damages claims, but not all class restitution claims, had been dropped. Similarly, there was nothing relevant to the waiver issue in Wells Fargo's statement that plaintiffs "lack evidence of damages for the class for *any legal claim*." Pls. Br. 53 (quoting PER203). Again, their "unfair practice" theory remained, so it was correct to say that plaintiffs had waived

30

"damages" for "any legal claim" but not restitution for their UCL claim, which still included their challenge to the posting practice itself.

Plaintiffs' reliance on their own pre-trial statement of claims and relief sought demonstrates the weakness of their argument. In their retrospective telling, that filing "state[d] an intent to seek restitution for the statutory deception claims." Pls. Br. 53 (citing PER205-10). That is not what the document said. Rather, without specifically mentioning their misrepresentation claim in their statement of relief sought, plaintiffs made a generic demand for restitution "[o]n each of the class claims." PER210. But they then went on to describe the sole *measure* of restitution sought with reference only to their substantive challenge to the bank's posting order: "the difference between (1) the amount class members actually paid Wells Fargo . . . and (2) the amount that class members would have paid Wells Fargo . . . had Wells Fargo *not embarked on the Resequencing Scheme*." PER210-11 (emphasis added).

These statements, which are the best evidence of non-waiver that plaintiffs can muster, simply confirm that plaintiffs never retracted their clear pre-trial concession that their expert "has not attempted to quantify the amount of damages *or restitution* from *any* classwide misrepresentation-based claims." ER514 (emphases added). The district court's contrary determination cannot be squared with the record and is clear error.

31

**III.    The Restitution Award Is Inconsistent With Due Process And The Rules Enabling Act.**

Plaintiffs do not argue, and could not credibly argue, that the $203 million restitution award reflects the actual harm to class members caused by the misrepresentations.  At trial, Wells Fargo introduced extensive evidence showing, on a class-wide basis, that the true injury was substantially less.  *Supra* Part II; WF Br. 51.  Moreover, had Wells Fargo been given the opportunity to present individualized defenses, it likely could have established that many class members did not rely on the misrepresentations, and thus incurred no injury from them.  WF Br. 51-54.  The district court nonetheless entered a blanket award that violated Due Process and the Rules Enabling Act.

Plaintiffs argue that Wells Fargo could not have been deprived of its defenses, because it *had* no defenses.  Pls. Br. 56.  As discussed above, plaintiffs are simply wrong that California law allows a court to order restitution to class members whom the defendant can demonstrate suffered no injury.  *Supra* pp. 14-15.  But even if state law purported to deny class action defendants the right to present defenses that would otherwise be available, this Court could not honor any such restriction.  It is undisputed that, in a non-class action under the UCL, a claimant who does not rely on a misrepresentation, or suffers no injury because of it, cannot recover.  *See Kwikset v. Super. Ct.*, 51 Cal. 4th 310, 330 n.14 (2011); *Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36, 43-44 (2009) (no

recovery for plaintiff who "would have [purchased the product] whatever the price"). This diversity action is subject to the *federal* rules on class actions, so even if California rules allowed defenses to be eliminated through use of the class mechanism, federal courts may not permit substantive rights to be "abridged" in that manner. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality opinion) ("A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged."). Moreover, Due Process does not permit states to void defenses in this way, such that "individual plaintiffs who could not recover had they sued separately *can* recover only because their claims were aggregated with others' through the procedural device of the class action." *Philip Morris USA Inc. v. Scott*, 131 S. Ct. 1, 4 (2010) (Scalia, J., in chambers).

Finally, plaintiffs are incorrect in arguing that Wells Fargo has waived its entitlement to a restitution award that comports with Due Process and federal law. Wells Fargo did not present this argument in *Gutierrez I* for the simple reason that the original restitution award did not present the same issues. The district court originally awarded restitution "predicated on liability for Wells Fargo's choice of

posting method," not the misrepresentations, *Gutierrez I*, 704 F.3d at 730, so

defenses Wells Fargo now raises (and raised on remand following *Gutierrez I*)

premised on the fact that restitution has been awarded to persons unaffected by any

misrepresentation were not relevant to the first appeal.

## IV.    The Injunction Is Vague And Overbroad.

Plaintiffs acknowledge that, under Federal Rule 65(d), an injunction

must "identif[y] its terms specifically" and "describe[] in reasonable detail the acts

to be enjoined."  Pls. Br. 62.  They also recognize that an injunction must be

"properly tailored to the 'specific harm alleged.'"  *Id.* at 63 (quoting *Skydive Ariz.,*

*Inc. v. Qattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012)).  The injunction in this

case does not meet those standards.

The district court's injunction prohibits Wells Fargo from "making or

disseminating, or permitting to be made or disseminated, any false or misleading

representations relating to the posting order of debit-card purchases, checks, and

ACH transactions in its customer bank accounts."  ER16.   In arguing that this

injunction is not impermissibly vague, plaintiffs ignore this Court's recent opinion

in *Del Webb Communities Inc. v. Partington*, in which a similar injunction was

invalidated on vagueness grounds.  652 F.3d 1145, 1150 (9th Cir. 2011).  In *Del*

*Webb*, this Court held that a "general prohibition against using 'illegal, unlicensed

and false practices' is too vague" because it fails to "sufficiently define what

additional future conduct will be covered." *Id.* Rather than attempting to explain why this binding precedent should not apply, plaintiffs assert that "[c]ourts routinely enter injunctions that are similar in scope and language to the injunction entered here." Pls. Br. 63. But plaintiffs cite *no* cases from this Court in which a similarly vague injunction has been upheld. Instead, they rely largely on unpublished and inapt district court cases that pre-date *Del Webb*.[7]

The two Ninth Circuit cases plaintiffs do cite are readily distinguishable. In *FTC v. Gill*, the Court did not consider the propriety of a general prohibition against false or misleading speech. Instead, it considered only whether a court had gone too far in enjoining defendants from engaging in the credit report business. 265 F.3d 944, 957 (9th Cir. 2001). The underlying injunction barred defendants from making several particular types of false claims, *see* 71 F. Supp. 2d 1030, 1049-50 (C.D. Cal. 1999), but this Court did not consider that aspect of the injunction, let alone affirm its propriety. Moreover, unlike in this case, the underlying injunction was based on findings that defendants had engaged in a broad range of fraudulent conduct with respect to all aspects of their credit report business. *Id.* In *TrafficSchool.com v. Edriver Inc.*, this Court *invalidated* an

---

[7] The one cited district court case that does not pre-date *Del Webb* was issued only three months later and fails to distinguish or even mention *Del Webb*. *See iYogi Holding Pvt. v. Secure Remote Support, Inc.*, No. C-11-0592, 2011 WL 6291793, at *19-20 (N.D. Cal. Oct. 25, 2011).

injunction against false advertising because of the risk that it would restrain truthful speech.  653 F.3d 820, 831 (9th Cir. 2011).  While the Court's opinion included a general statement that false speech may be enjoined, it did not specify the form the injunction could take, and this Court made clear in *Del Webb* that it may not take the vague form the district court chose here.

Plaintiffs' other arguments are similarly flawed.  They assert that circuit courts have instructed district courts to tailor injunctions in accord with the one in this case, yet the two cases they cite both involve courts clarifying injunctions that were already far more specific than the one at issue here.  *See U-Haul Int'l Inc. v. Jartran*, 793 F.2d 1034 (9th Cir. 1986) (considering an injunction barring specific comparative claims involving U-Haul and Jartran); *L. & J.G. Stickley, Inc. v. Cosser*, 255 F. App'x. 541 (2d Cir. 2007) (considering injunction against use of a particular trademarked business name).  Despite the specificity, both circuit courts found that the injunctions could bar only false and misleading examples of the particular claims or language at issue.  *Id.*  Otherwise, as this Court explained, the injunctions would have raised First Amendment concerns.  *U-Haul*, 793 F.2d at 1042 ("the language of the injunction is much broader than the Conclusion of Law and, perhaps unintentionally, raises First Amendment concerns").

Plaintiffs also miss the mark in claiming that the injunction is sufficiently specific because ordinary people know what "false or misleading" statements are, and the district court's findings are sufficient to put Wells Fargo on notice as to what particular "deceptive conduct" is enjoined. Pls. Br. 64. It is naïve to assume that it is so simple to predict what statements (even literally true ones) a court might find misleading, particularly in an area as complex as a bank's posting order. Moreover, courts have consistently held that "an injunction must be more specific than a simple command that the defendant obey the law," even if ordinary people should be capable of understanding the law. *S.C. Johnson & Son, Inc. v. Clorox*, 241 F.3d 232, 241 (2d Cir. 2001). Nor do the district court's factual findings supply the requisite specificity missing from the injunction itself. The court singled out only a few particular claims that it found misleading with respect to high-to-low posting order, but the injunction is much broader, barring all false and misleading speech with regard to *any* posting order for debit-card purchases, checks, and ACH transactions. The findings provide no real guidance as to what may be considered "deceptive conduct" should the bank, for example, adopt a different posting order (as it has actually done, *see* ER234-36).

The district court's decision to issue an injunction that sweeps far more broadly than its findings also requires reversal for a second reason: overbreadth. Plaintiffs point out that injunctions may "restrain acts which are of

the same type or class as unlawful acts which the court has found to have been committed." Pls. Br. 65 (quoting *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941)). An injunction is permitted to include such restraints only if they are "necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1049 (9th Cir. 2013). As this Court has held in two of the cases plaintiffs cite, "an injunction must be tailored to eliminate only the specific harm alleged." *See Skydive Ariz., Inc.*, 673 F.3d at 1116 (quoting *E&J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992)) (affirming refusal to issue a nationwide injunction where the proven harm was limited to Arizona).

In this case, plaintiffs alleged that they were harmed because they were induced to incur overdraft fees by certain misleading statements about debit cards in the context of Wells Fargo's use of high-to-low posting order. That harm would be completely remedied by barring the specific misleading statements in the context that made them misleading. No more was needed "to provide complete relief," and therefore no more was permissible. *Califano*, 442 U.S. at 702; *see also E&J Gallo Winery*, 967 F.2d at 1297-98 (striking down portions of an injunction limiting the advertising and labeling of "other products" where plaintiffs had alleged trademark infringement only with respect to cheese). The district court, however, issued a broad order governing posting orders and transaction types

38

about which plaintiffs never complained.  For that reason, and because the injunction was too vague, it must be vacated.

## V.    The District Court Properly Denied Pre-Judgment Interest.

Plaintiffs' cross-appeal consists of a conclusory, one-page argument that the district court erred in failing to award prejudgment interest under California Civil Code Section 3287(a) or 3288.  The district court did not abuse its discretion in denying plaintiffs' request for prejudgment interest.

Pre-judgment interest may be awarded under California Civil Code Section 3287(a) only where the damages are "certain, or capable of being made certain by calculation."  That standard is satisfied only if there is "essentially no dispute between the parties concerning the basis of computation of damages." *Fireman's Fund Ins. Co. v. Allstate Ins. Co.*, 234 Cal. App. 3d 1154, 1173 (1991) (citation omitted).  "The statute does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, depends upon a judicial determination based upon conflicting evidence . . . ." *Id.* (citation and quotation marks omitted).

Here, the amount of monetary relief awarded to plaintiffs plainly depends on a "judicial determination based upon conflicting evidence." *Id.*  As the district court observed, "[e]ven *plaintiffs* presented alternative means of measuring restitution, with calculations ranging from well over $300 million to half that

amount." PER4. Indeed, plaintiffs' expert presented six different options for calculating restitution under seven additional sequencing orders, for a total of *42* possible restitution calculations, with results ranging from less than $70 million to nearly $450 million. PER585. When plaintiffs' own expert offers such a variety of options, the amount of monetary relief is anything but "certain." Cal Civ. Code § 3287(a).

Nor is prejudgment interest appropriate under Section 3288, which gives a trial court discretion to award interest "[i]n an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice." To Wells Fargo's knowledge, no appellate court has ever reversed a trial court's discretionary denial of pre-judgment interest under Section 3288. This case, in which the district court found that Wells Fargo did *not* act with oppression, fraud, or malice, *see* PER6, should not be the first.

## CONCLUSION

The district court's restitution order and injunction should be vacated

and its judgment reversed.

Respectfully submitted,


   /s/ Robert A. Long, Jr.   
Sonya D. Winner                          Robert A. Long, Jr.
David M. Jolley                          Mark W. Mosier
COVINGTON & BURLING LLP                  David M. Zionts
One Front Street                         Colleen E. Roh
San Francisco, CA 94111-5356             COVINGTON & BURLING LLP
(415) 591-6000                           1201 Pennsylvania Avenue NW
                                         Washington, DC 20004-2401
Emily Johnson Henn                       (202) 662-6000
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
(650) 632-4700

*Attorneys for Defendant-Appellant Wells Fargo Bank, N.A.*


May 1, 2014

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendant-Appellant Wells

Fargo Bank states that it is not aware of any related cases.


                                    /s/ Robert A. Long, Jr.
                                    Robert A. Long, Jr.


May 1, 2014

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 28.1(e)(2)(A) because it contains 9,527 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman and 14 point font.

    /s/ Robert A. Long, Jr.
Robert A. Long, Jr.

May 1, 2014

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 1, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

    /s/ Robert A. Long, Jr.
        Robert A. Long, Jr.

May 1, 2014